(18 App. Div. 208.)

## ABRAMS v. HORTON.

(Supreme Court, Appellate Division, Second Department. June 8, 1897.)

1. OFFICERS—AUTHORITY TO MAKE CONTRACT OF EMPLOYMENT.
   Laws 1896, c. 225, § 4, providing that the county superintendents of the poor, one of whom is elected annually, shall "employ" a keeper of the almshouse unless a keeper be "appointed" by the board of supervisors, does not authorize the superintendents of the poor to employ an almshouse keeper for a term of years.

2. SAME—KEEPERS OF ALMSHOUSES.
   A keeper of an almshouse "employed" by the superintendents of the poor on the failure of the board of supervisors to "appoint" a keeper (Laws 1896, c. 225, § 4) is not an officer, within Const. 1895, art. 10, § 3, providing that an office, the duration of which is not fixed by the constitution or by statute, shall be held during the pleasure of the body making the appointment.

Controversy between Tredwell Abrams, as plaintiff, and William P. Horton, as defendant, submitted without action, pursuant to Code Civ. Proc. § 1279. Judgment for plaintiff.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William J. Youngs, for plaintiff.
F. H. Van Vechten, for defendant.

WILLARD BARTLETT, J.　On December 2, 1896, the defendant, then being the keeper of the Queens county poorhouse, resigned his place as such keeper, and the county superintendents of the poor accepted his resignation.　These officers then proceeded on the same day to adopt a resolution employing the defendant in the same capacity for a period of three years from that date, and they made with him a contract in writing, whereby they assumed to employ him and he undertook to act as keeper of the almshouse for that length of time, at a salary of $1,000 a year.　In January, 1897, a new county superintendent of the poor having come into office, the three county superintendents met, and passed a resolution which, in its original form, appointed, and in its amended form employed, the plaintiff to be the keeper of the county poorhouse for the ensuing year.　The plaintiff has demanded possession of the poorhouse from the defendant, who has refused to surrender the same.　The superintendents of the poor paid the defendant his salary for services as keeper in December, 1896, and January, 1897, but have refused to pay him for February.　There is no dispute as to the qualifications of either party to act as keeper, the only questions presented for the determination of this court being whether the superintendents of the poor had power to make the contract for the employment of the defendant for a term of three years, and whether such contract is binding upon the present superintendents.

Chapter 225 of the Laws of 1896, which took effect on the 1st of October in that year, contained the following provisions:

"The county superintendents of the poor shall: * * * (2) Provide and keep in repair suitable almshouses when directed by the board of supervisors of their county. * * * (4) Unless a keeper be appointed by the board of supervisors, employ suitable persons to be keepers of such houses."

There are three county superintendents of the poor in Queens county, one being elected annually, as provided in the county law.　Laws 1892, c. 686, § 210, subd. 1.　As the board of supervisors has not appointed a keeper of the county almshouse, it is the duty of the superintendents to employ a suitable person to act as such.　The keeper of the almshouse thus employed is plainly not an officer within the purview of section 3 of article 10 of the constitution, which provides:

"When the duration of any office is not provided by the constitution, it may be declared by law, and, if not so declared, such office shall be held during the pleasure of the authority making the appointment."

The tendency of the courts, however, has been to hold that the same rule, independently of legislative enactment, applies also to the tenure of persons who are in the public service as employés merely, and not as officers.　In the case of People v. Robb, 126 N. Y. 180, 182, 27 N. E. 267, although there the relator was a park policeman, the court uses this language:

"With respect to the tenure or duration of a public employment, such as the relator had at the time of his dismissal, the general rule is that, where the power of appointment is conferred in general terms, and without restriction, the power of removal, in the discretion and at the will of the appointing power is implied, and always exists, unless restrained and limited by some other provision of law."

In People v. Morton, 148 N. Y. 156, 160, 42 N. E. 538, 539, the relator was an orderly and watchman in the capitol at Albany, whom the superintendent of buildings had express authority to discharge as he did; but the court of appeals, in sustaining his exercise of this authority, declared that:

"Even in the absence of such specific power the rule is well settled that the power to appoint to the public service carries with it to the appointing power, in the absence of limiting words, or of a fixed term, the right to remove the appointee at pleasure."

Still more directly in point are the remarks of Rumsey, J., in the recent case of People v. Murray, 2 App. Div. 359, 37 N. Y. Supp. 848, where he speaks as follows concerning the relator, who was an excise inspector in the city of New York:

"It is not seriously contended by the relator but that the position which he occupied was that of a mere employé, and that the power of removal was intrusted to the commissioners, to be used practically at their discretion. This was the opinion of the court of appeals with regard to persons holding the same position, as expressed in the case of Gregory v. Mayor, 113 N. Y. 416, 21 N. E. 119. Occupying, as the relator did, simply the position of an employé, it is well settled that the respondents, to whom was given the right to employ him, had also the right to remove him whenever they saw fit."

I think that the same right of removal accompanies the right to employ a person as keeper of the Queens county almshouse, and that a due regard to the proper exercise of the powers of the county superintendents of the poor in respect to that position precludes them from making such a contract of employment as that between them and the defendant which is contained in this record. They have no authority thus to fix the duration of a public employment which the law and the legislature have left indefinite,—presumably for some good reason. If such a contract may legally be made, it is not perceived why the term of the keeper might not be extended to thirty years as well as three. An extension of this kind, or any limitations by contract upon the power of the county superintendents to freely exercise all their official functions with respect to the keeper of the almshouse, would be opposed to public policy, and detrimental to the welfare of the community. In my opinion, the superintendents had no right to make the three-years contract in question, and that contract is not binding upon the present superintendents.

The plaintiff should have judgment accordingly.    All concur.