EDWARD FRIEDMAN, as Treasurer of the LONG ISLAND MEN'S DIVISION OF THE HEBREW KINDERGARTEN AND INFANTS' HOME, a Voluntary Unincorporated Association, Respondent, v. THE STATE OF NEW YORK, Appellant.*

(Claim No. 22009.)

Third Department, November 2, 1934.

* Revg. 150 Misc. 85.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General, F. R. Chant* and *Burns Barford, Assistant Attorneys-General,* of counsel], for the appellant.

*Benjamin Barondess,* for the respondent.

BLISS, J. On August 24, 1931, section 3 of chapter 912 of the Laws of 1920, as amended by chapter 714 of the Laws of 1921, and chapter 353 of the Laws of 1923, known as the State Athletic Commission Law, provided that wrestling matches where an admission fee was received were allowed and control over such exhibitions was delegated to the State Athletic Commission in the Department of State. Wrestling matches, except in accordance with the provisions of this act, were prohibited and the Commission was authorized to issue annual permits for holding such wrestling matches, but only to corporations thereunto duly licensed therefor. This statute also provided that all corporations should be licensed by the license committee and no such corporation should be permitted to participate either directly or indirectly in any wrestling match or the holding thereof unless such corporation should have first procured a license from the license committee.

Section 25 of this act, as amended by chapter 554 of the Laws of 1930, provided that every corporation holding any wrestling match or exhibition under this act for which an admission is charged and received, should pay to the Department of State five per centum of the total gross receipts, exclusive of any Federal taxes paid thereon. Such payment shall be made within forty-eight hours after the holding of the contest.

On July 2, 1931, the Long Island Men's Division of the Hebrew Kindergarten and Infants' Home, a voluntary unincorporated charitable association, entered into a written contract with the Inter-City Exhibition Corporation in relation to certain wrestling matches proposed to be held at the stadium of this corporation at Long Beach, N. Y. The written agreement recited that this corporation had represented to the association that it was the lessee of this stadium and was conducting regular weekly prize fighting bouts thereat and " has a license from the State Athletic Commission

under which it conducts such boxing bouts, and under which ·it may also enter into this agreement, and also may stage the wrestling matches hereinafter referred to at said Stadium on the evening hereinafter specified therefor," and that the association desired to conduct a series of wrestling matches at this stadium on August 10, 1931. The agreement then provided that the corporation subleased to the association the stadium for the night of Monday, August 24, 1931, and granted to the association the exclusive license and privilege of giving and staging in said stadium on said night a series of wrestling matches, " same to be conducted in accordance with the rules and regulations of the State Athletic Commission of the State of New York." The contract also provided that the corporation should supply and pay for all expenses of every nature and description connected with the said wrestling matches and the leasing and operation of the stadium and the furnishing of equipment therefor and all expenses incidental to said wrestling tournament. The association agreed to pay to the corporation and the corporation agreed to accept " in full payment of said rental and license for the night of August 24, 1931," a certain sum of money. This contract also provided that the association should have complete control of the stadium and the box office and that the box office should contain a representative of the association who should be in charge thereof, and that " the receipts of the box office shall belong entirely to the association and shall not be, in any way, interfered with or received by the company or its representatives." This contract was negotiated and the terms agreed on in the office of the State Athletic Commission in the presence of the secretary of the Commission, who acted as a general arbiter. Shortly thereafter the association made a contract with a promoter of wrestling bouts to furnish ten wrestlers for the night in question. While the wrestling bouts were in progress on the night of August 24, 1931, an inspector from the office of the State Athletic Commission appeared and insisted on collecting for the State the tax of five per cent of the total gate receipts. After some negotiations the tax was turned over to the State inspector by a representative of the corporation in the box office and there was also made out and filed with the Commission the usual verified athletic tax report, executed by the secretary of the Inter-City Exhibition Corporation, showing the nature of the exhibition, the amount of the gate receipts and the amount of the tax. A representative of the association, who was also present at the time of the payment of the tax, claimed that there was no tax due the State because this was an unincorporated association and not a corporation as specified in section 25 of the State Athletic Commission Law, and

that the tax was being paid under protest. The claimant thereafter filed a·claim under section 12 of the Court of Claims Act against the State for the amount of the tax. The Court of Claims rendered judgment in favor of the claimant from which the State now appeals.

It was contended by the claimant on the trial, and is here urged, that because section 25 of the law refers only to corporations holding wrestling matches, no tax was due the State. It now says that it, an unincorporated association, conducted these wrestling matches, even though it was then a violation of the law for any one except a corporation holding a proper license to conduct such an exhibition. The claimant says that under the contract between the corporation, which held a proper license, and the association claimant, which was not and could not be legally licensed, it was the intention of the parties that the association should conduct the matches. With these contentions we cannot agree. We may not presume that the parties to this agreement, made in the very presence of the secretary of the State Athletic Commission, intended to enter into a contract for the doing of something which was unlawful. We believe that it was the intention of the parties to this agreement, as evidenced by the agreement itself, that these wrestling matches should be conducted in accordance with law and by a corporation which had a license to so conduct them and not by an association which had no such license. The agreement recites the fact that the corporation had a license from the State Athletic Commission under which it might conduct such bouts and enter into the agreement. Surely the parties under these circumstances did not mean to provide in their written agreement that the wrestling matches were to be conducted by the party which had no such license and could not legally obtain one. Such a contract would be illegal as it would provide for the doing of an illegal act. " The presumption is in favor of the legality of contracts. The law does not assume an intention to violate the law, nor will an agreement be adjudged to be illegal, where it is capable of a construction which will uphold it, and make it valid." (*Lorillard* v. *Clyde*, 86 N. Y. 384.)

The judgment of the Court of Claims should be reversed and the claim dismissed upon the merits, with costs.

HILL, P. J., and CRAPSER, J., concur; RHODES, J., concurs in the result; HEFFERNAN, J., dissents, with an opinion.

HEFFERNAN, J. (dissenting). I dissent and vote to affirm the judgment of the Court of Claims.

Section 25 of the State Athletic Commission Law as it existed in 1931 applied only to corporations and not to an association such

as claimant. That statute has since been amended by chapter 625 of the Laws of 1933 and now applies to " every individual, corporation, association or club." It seems to me there can be no doubt about the fact that this claimant conducted the wrestling matches in question. The contract is specific in that respect. Whether claimant committed a misdemeanor in conducting these matches without a license is beside the point. If it did violate the law in that respect, the State has a remedy by criminal prosecution. It may not, however, exact from claimant an illegal tax merely because it contends that a crime has been committed.

The appellant also contends that the Court of Claims had no jurisdiction because no notice of intention to sue was filed with the Superintendent of Public Works. That point is without merit. In addition to that at the time of the hearing the attorney representing the State made a motion to dismiss the claim among other grounds because it was not properly filed. When questioned about this he answered that he was not urging it seriously, that it was simply a blanket motion and that he would not attempt to catch claimant on any technicality. His position then is entirely inconsistent with his present position. It was not necessary, however, to file this claim with the Superintendent of Public Works. Only claims under section 12-a of the Court of Claims Act need be filed. This is not a claim arising out of a tort.

In his opinion Mr. Justice BLISS takes the position that the wrestling show was conducted by the Inter-City Exhibition Corporation. It seems to me that a reading of the contract demonstrates otherwise.

Judgment reversed and claim dismissed upon the merits, with costs.

We reverse the fourth finding of fact and disapprove the first and second conclusions of law contained in the decision below.

We reverse the following findings of fact in the claimant's requests to find:

Fourth; that portion of the tenth finding which states that said wrestling matches were conducted " by the claimant herein, the Long Island Men's Division of the Hebrew Kindergarten and Infants Home, which association on said night was in possession and control of said stadium, of the persons employed therein, of the contestants and of the equipment thereof, as well as of the box office and the moneys received therein."

The following portions of the eleventh finding: " In violation of said contract," " purported," " the knowledge or," " purported."

And " two days later, and on or about August 26, 1931, without the knowledge, consent or authorization of the Long Island Men's Division of the Hebrew Kindergarten and Infants' Home, paid over said sum of $166.75 to the Secretary of State, purporting to comply with section 25 of the State Athletic Commission Law."

We disapprove of the first and second conclusions of law contained in the claimant's requests.