Conway, Ch. J.
In 1952 petitioner-respondent Abram S. Ginnes instituted a Supreme Court action against appellant, Prockter Productions, Inc., based upon an alleged breach by Prockter of a contract to employ him as a writer of radio and television plays. Prior to the trial of the action, negotiations took place between the parties with a view to submitting their existing differences to arbitration; The negotiations continued for eight months with petitioner-respondent, Writers Guild of America East, Inc., a labor organization to which Ginnes belongs, taking an active part in them on behalf of Ginnes.
*307 During the period of negotiations, and on February 24, 1954 the attorney for Prockter wrote the following to Ginnes and the Writers Guild:
‘ ‘ Dear Mr. Jablow :
Enclosed herewith I am sending you my suggestions for the questions to be submitted to arbitrators. There remain, if these are agreeable, the tasks of selecting the arbitrators and determining the figure.
Very truly yours,
/s/ Eugene L. Bondy ”
On or about June 15, 1954 the representatives of the parties herein initialed the following document, Exhibit A herein, which was enclosed with the above letter:
“ 1. Did Prockter Productions, Inc. and Abram Ginnes in March, 1952 enter into a legally enforcible agreement for Abram Ginnes to write for two years and thirteen weeks:
“ Nine scripts per cycle of thirteen weeks for the television program known as T-Men in Action, at a rate of $700 per script for the first two cycles, and $750 thereafter;
“ Seven scripts per cycle of thirteen weeks for the television program known as Big Story TV, at the rate of $700 per script for the first two cycles, and $750 thereafter; and
“ Three scripts per cycle of thirteen weeks for the radio program known as Big Story, at the rate of $400 per script?
“2. If the answer to 1 is in the affirmative, did Abram Ginnes suffer any damage therefrom? The amount of damage, if any, is not within the function of the arbitrators to determine, the parties having, in that event, chosen a different method.
/s/ L. L.
R. B. J.
A. K.
“ Ginnes suit to be discontinued in advance of arbitration.”
Thereafter, this proceeding was brought to compel arbitration.
Section 1449 of the Civil Practice Act provides: “ § 1449. Form of contract or submission. A contract to arbitrate a controversy thereafter arising between the parties must be in writing. Every submission to arbitrate an existing controversy *308 is void, unless it or some note or memorandum thereof he in writing, and subscribed by the party to be charged therewith, or by his lawful agent. ’ ’
The question here presented is whether Exhibit A, quoted above, and relied upon by Ginnes and the Writers Guild, constitutes the requisite “ submission to arbitrate ”. It is their contention that Exhibit A is the agreement to submit to arbitration and that the agreement was entered into upon the initialing thereof, which was sometime after it had been prepared.
It is a well-established rule that “No one is under a duty to resort to arbitration unless by clear language he has so agreed.” (Matter of Lehman v. Ostrovsky, 264 N. Y. 130, 132; see, also, Matter of Princeton Rayon Corp. [Gayley Mill Corp.], 309 N. Y. 13; Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 N. Y. 288, 291; Keep & Hale v. Goodrich, 12 Johns. 397; Matter of Arthur Philip Exp. Corp. [Leathertone, Inc.], 275 App. Div. 102, 104-105). “ Though the principle of arbitration in commercial transactions is a sound one and should be encouraged, no one may be compelled to give up his right to resort to established judicial tribunals with all of their safeguards unless' he has agreed by a writing to do so.” (Matter of Arthur Philip Exp. Corp. [Leathertone, Inc.], 275 App. Div. 102, 104, supra.)
Those principles compel the conclusion that petitioners Ginnes and Writers Guild have failed to prove a “ submission to arbitrate ”.
Exhibit A, the sole paper to which we must look to find an agreement of submission, cannot be considered to be an agreement, in and of itself, to submit to arbitration, since it contains no words of agreement. That is, there is not a word in Exhibit A to indicate that the parties in fact agreed to submit the enumerated questions to arbitration and be bound by the decision of the arbitrators. On its face, Exhibit A is nothing more or less than a formulation of the questions proposed to be submitted to arbitration.
It is evident from Exhibit A that the parties had an eventual arbitration in mind but Exhibit A does not evidence the fact of the parties’ actual agreeement, in prcesenti, to arbitrate. From the letter of Prockter’s attorney it is clear that the task of selecting the arbitrators — including the number thereof — was intended to be a condition precedent to a final agreement *309 to arbitrate. Clearly, Exhibit A does not name the arbitrators or state the number of arbitrators to be employed and the letter makes it clear that the parties did not intend to leave their selection to the Supreme Court. Before a court stamps a writing as a submission to arbitrate, it must insist upon a paper less uncertain and ambiguous than the one presently before us.
Although, in view of our disposition of the sole contention of petitioners, no question relating to the second sentence of section 1448 of the Civil Practice Act is presented here, we note that the passage of chapter 851 of the Laws of 1940, which was signed despite the objection of the New York State Federation of Labor, was to meet our decision in Matter of Fletcher (237 N. Y. 440, 451, Lehman, J.), Avherein we said: “ The provisions of the Arbitration Law are properly applicable to any contract where the parties have agreed to substitute for the courts an informal tribunal of their choice in the settlement of a controversy, but they are not applicable where the parties have agreed only to permit third parties to decide a particular matter instead of attempting to reach an agreement themselves.” Further additions to the second sentence of section 1448 were made by chapter 757 of the Laws of 1952.
The order of the Appellate Division and that of the Special Term should be reversed, with costs in this court and in the Appellate Division, and the motion to compel arbitration be denied.