Samuel J. Silverman, J.
These are cross motions for summary judgment, pursuant to CPLR 3212, on the counterclaims and cross claims asserted by certain defendants in this action regarding the disposition of a share in the remainder of a trust fund.
Plaintiffs, trustees of a trust established in 1919 by Abraham L. Werner, sue for a declaratory judgment to determine who is entitled to one half of the principal of the trust fund— the share in which Steven L. Werner, decedent (hereinafter "Steven”), was the life beneficiary and over which he had a testamentary power of appointment. The dispute concerns the manner in which Steven exercised his power of appointment and is between Steven’s second wife, Harriet G. Werner (hereinafter "Harriet”), along with their children, Anna G. and Frank S. Werner (hereinafter "Anna” and "Frank”) and Steven’s third wife, Edith Fisch Werner (hereinafter "Edith”).
*222 Anna and Frank claim Steven’s entire share of the trust remainder on the basis of a Mexican consent judgment of divorce, obtained by Steven against Harriet on December 9, 1963, which incorporated by reference and approved a separation agreement, entered into between Steven and Harriet on December 1, 1963. That agreement included the following provision: "10. The Husband shall make, and hereby promises not to revoke, a will in which he shall exercise his testamentary power of appointment over his share in a trust known as 'Abraham L. Werner Trust No. 1’ by establishing with respect to said share a trust for the benefit of the aforesaid Children, for the same purposes and under the same terms and conditions, as the trust provided for in Paragraph '9’ of this Agreement, insofar as said terms and conditions are applicable thereto.”
Paragraph 9 in relevant part provides for the wife to receive the income of the trust, upon the death of the husband, for the support and maintenance of the children, until they reach 21 years of age, at which time they are to receive the principal in equal shares.
On March 20, 1964, less than four months after entry of the divorce judgment, Steven executed a will in which, instead of exercising his testamentary power of appointment in favor of Anna and Frank, he left everything to his third wife, Edith: "First, I give, devise and bequeath all of my property * * * including * * * all property over which I have a power of testamentary disposition, to my wife, Edith Fisch Werner.”
Steven died in April, 1971 and his will was admitted to probate by the Surrogate’s Court of New York County on July 11, 1973.
(1) Paragraph 10 of the separation agreement is a contract to exercise a testamentary power of appointment not presently exercisable (EPTL 10-3.3) and as such is invalid under EPTL 10-5.3, which provides as follows: "(a) The donee of a power of appointment which is not presently exercisable, or of a postponed power which has not become exercisable, cannot contract to make an appointment. Such a contract, if made cannot be the basis of an action for specific performance or damages, but the promisee can obtain restitution of the value given by him for the promise unless the donee has exercised the power pursuant to the contract.”
This is a testamentary power of appointment. The original trust instrument provided in relevant part that: "Upon the *223 death of such child [Steven] the principal of such share shall be disposed of as such child shall by its last will direct, and in default of such testamentary disposition then the same shall go to the issue of such child then surviving per stirpes”.
It is not disputed that New York law is determinative of the validity of paragraph 10 of the separation agreement; the separation agreement itself provides that New York law shall govern.
The reasoning underlying the refusal to enforce a contract to exercise a testamentary power was stated by Judge Cardozo in the case of Farmers’ Loan and Trust Co. v Mortimer (219 NY 290, 293-294): "The exercise of the power was to represent the final judgment, the last will, of the donee. Up to the last moment of his life he was to have the power to deal with the share as he thought best * * * To permit him to bargain that right away would be to defeat the purpose of the donor. Her command was that her property should go to her son’s issue unless at the end of his life it remained his will that it go elsewhere. It has not remained his will that it go elsewhere; and his earlier contract cannot nullify the expression of his final purpose. 'It is not, I apprehend, to be doubted,’ says Rolt, L. J., in Cooper v Martin (LR [3 Ch App] 47, 58) 'that equity * * * will never uphold an act which will defeat what the person creating the power has declared, by expression or necessary implication, to be a material part of his intention.’” (See also, Matter of Brown, 33 NY2d 211.)
(2) The question then is whether entry of the Mexican divorce decree, incorporating the separation agreement, alters this result; I do not think it does.
The extent to which the Mexican divorce decree entered by consent will be recognized by this court is at best limited by the established principles of collateral estoppel and comity. Although the separation agreement entered into between Harriet and Steven is involved in both the divorce action and this action for a determination of who is entitled to Steven’s share of the trust, the causes of action are different within the res judicata rule. Causes of action are the same for this purpose when "a different judgment in the second would destroy or impair rights or interests established by the first.” (Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 307.) Whatever the judgment in this case, it would not impair the Mexican decree, which did not direct Steven to exercise his power of appointment, or to do anything at all with *224 respect to the power, but merely "approved” the separation agreement, i.e., as fair and reasonable.
Therefore, pursuant to the doctrine of collateral estoppel, the Mexican decree can bar only relitigation of matters actually and necessarily litigated and decided in the prior action. (Ibid.) The specific question of the validity of the agreement’s provision for the exercise of Steven’s power of appointment was not litigated.
Moreover, since this is a foreign divorce decree, and one entered into by consent, it is at most entitled to the respect which derives from principles of comity. I think comity does not require enforcing a Mexican consent judgment in a manner that the Mexican court did not pass upon or consider under rules of New York property law with which the Mexican court was presumably unfamiliar and which would seriously affect the rights of New York litigants.
Accordingly, I hold that the Mexican divorce decree is not res judicata on this point.
(3) As indicated, the statute makes a promise to exercise a testamentary power in a particular way unenforceable. However, EPTL 10-5.3 (subd [b]) permits a donee of a power to release the power, and that release, if in conformity with EPTL 10-9.2, prevents the donee from then exercising the power thereafter.
Under the terms of the trust instrument, if Steven fails to exercise his power of appointment, Anna and Frank (along with the children of Steven’s first marriage) take the remainder, i.e., the property which is the subject of Steven’s power of appointment. Therefore, Harriet, Anna and Frank argue that at a minimum Steven’s agreement should be construed as a release of his power of appointment, and that Anna and Frank should be permitted to take as on default of appointment.
There is respectable authority — by no means unanimous authority, and none binding on this court — to the effect that a promise to appoint a given sum to persons who would take in default of appointment should, to that extent, be deemed a release of the power of appointment. (See Restatement, Property, § 336 [1940]; Simes and Smith, Law of Future Interests, § 1016 [1956].)
This argument has the appeal that it seems to be consistent with the exception that the release statute EPTL 10-5.3 (subd *225 [b]) carves out of EPTL 10-5.3 (subd [a]); and is also consistent with the intentions and reasonable expectations of the parties at the time they entered into the agreement to appoint, here in the separation agreement; and that therefore perhaps in these circumstances the difference between what the parties agreed to and a release of the power of appointment is merely one of form. Whatever may be the possible validity or applicability of this argument to other circumstances and situations, I think it is inapplicable to this situation because:
(a) It is clear that the parties did not intend a release of the power of appointment. (Cf. Matter of Haskell, 59 Misc 2d 797.) Indeed, the agreement — unlike a release of a power of appointment — expressly contemplates that something will be done by the donee of the power in the future, and that that something will be an exercise of the power of appointment. Thus, the agreement, in the very language said to be a release of the power of appointment, says (par 10, supra ): "The Husband shall make * * * a will in which he shall exercise his testamentary power of appointment.” (Emphasis added.)
(b) Nor is the substantial effect of the promised exercise of the power the same as would follow from release of, or failure to exercise the power.
(i) Under the separation agreement, the power is to be exercised so that the entire appointive property shall be for the benefit of Anna and Frank; under the trust instrument, on default of exercise of the power, the property goes to all of Steven’s children (Anna, Frank and the two children of Steven’s first marriage). Thus the agreement provides for appointment of a greater principal to Anna and Frank than they would get in default of appointment.
(ii) Under the trust instrument, on default of exercise of the power, the property goes to the four children absolutely and in fee. The separation agreement provides that Steven shall create a trust, with income payable to Harriet as trustee, for the support of Anna and Frank until they both reach the age of 2Í, at which time the principal shall be paid to them or the survivor; and if both fail to attain the age of 21, then the principal shall revert to Steven’s estate. Thus, Anna and Frank’s interest in the principal would be a defeasible interest if they did not live to be 21; and indeed at Steven’s death they were both still under 21 so that their interest was defeasible.
(iii) Finally, under the separation agreement, as just noted, if Anna and Frank failed to qualify to take the principal, *226 either because they both died before Steven or before reaching the age of 21, then the principal would go to Steven’s estate. Under the trust instrument, on the other hand, on default of appointment and an inability of Anna and Frank to take, Steven’s share of the principal would not go to Steven’s estate, but to his other children, if living, and if not, to the settlor’s next of kin.
In these circumstances, I think it is too strained and tortuous to construe the separation agreement provision as the equivalent of a release of the power of appointment. If this is a release then the exception of EPTL 10-5.3 (subd [b]) has swallowed and destroyed the principal rule of EPTL 10-5.3 (subd [a]).
I note that in Wood v American Security and Trust Co. (253 F Supp 592, 594), the principal case relied upon by Harriet, Anna and Frank on this point, the court said: "The Court finds that it is significant that the disposition resulting from the agreement is in accordance with the wishes of the testator in the event the power should not be exercised.”
Furthermore, the language of the instrument in that case was much more consistent with the nonexercise of the powers of appointment than in the case at bar.
Accordingly, I hold that the separation agreement is not the equivalent of a total or partial release of the power of appointment.
(4) Anna and Frank also seek restitution out of the trust fund of the value given by them in exchange for Steven’s unfulfilled promise. EPTL 10-5.3 (subd [a]) provides that although the contract to make an appointment cannot be the basis for an action for specific performance or damages, "the promisee can obtain restitution of the value given by him for the promise unless the donee has exercised the power pursuant to contract.”
Anna and Frank’s remedy is limited, however, to the claim for restitution that they have (and apparently have asserted) against Steven’s estate. They may not seek restitution out of the trust fund, even if their allegation that the estate lacks sufficient assets to meet this claim were factually supported, because the trust fund was not the property of Steven, except to the extent of his life estate, so as to be subject to the equitable remedy of restitution, but was the property of the donor of the power of appointment until it vested in someone else. (Farmers’ Loan & Trust Co. v Mortimer, 219 NY 290, *227 295, supra; see Matter of Rosenthal, 283 App Div 316, 319; see, also, EPTL 10-7.1 and 10-7.4.)
(5) Finally, Edith moves for summary judgment that she is entitled to receive Steven’s share of the trust fund on the ground that Steven exercised his testamentary power in her favor in his will of March 20, 1964, in the provision quoted at the beginning of this decision.
Since there are no factual questions raised as to Steven’s exercise of his testamentary power of appointment in Edith’s favor in that will provision, and since each of the other defendants’ conflicting claims to the share of trust principal has been dismissed, Edith’s motion for summary judgment is granted.
(6) Accordingly, on the motions for summary judgment I direct judgment declaring that defendant Edith Fisch Werner is entitled to the one-half share of Steven C. Werner in the principal of the Abraham L. Werner trust; to the extent that the counterclaims and cross claims asserted by Harriet, Anna and Frank seek relief other than a declaratory judgment, they are dismissed.