In the Matter of GEORGE W. REESE, JR., Respondent, v WILLIAM M. LOMBARD, as Sheriff for Monroe County, Appellant, and LUCIEN A. MORIN, as Manager for Monroe County, et al., Respondents.

In the Matter of WILLIAM SEXSTONE, Respondent, v WILLIAM M. LOMBARD, as Sheriff for Monroe County, Appellant, and LUCIEN A. MORIN, as Manager for Monroe County, et al., Respondents.

In the Matter of RICHARD C. SCHOTT, Respondent, v WILLIAM M. LOMBARD, as Sheriff for Monroe County, Appellant, and LUCIEN A. MORIN, as Manager for Monroe County, et al., Respondents.

In the Matter of DAVID C. STEINMILLER, Respondent, v WILLIAM M. LOMBARD, as Sheriff for Monroe County, Appellant, and LUCIEN A. MORIN, as Manager for Monroe County, et al., Respondents.

In the Matter of ALBERT D. DETANDT, Respondent, v WILLIAM M. LOMBARD, as Sheriff for Monroe County, Appellant, and LUCIEN A. MORIN, as Manager for Monroe County, et al., Respondents.

Fourth Department, April 17, 1975

*Goldstein, Goldman, Kessler & Underberg (Thomas G. Dignan* and *Russell I. Zuckerman* of counsel), for appellant.

*James T. Hancock* for George W. Reese, Jr., and others, respondents.

SIMONS, J. Petitioners are five deputy sheriffs of Monroe County. On December 28, 1973 the outgoing Sheriff promoted petitioner Sexstone to lieutenant and the other four petitioners to sergeant. In addition, a sixth employee was promoted to Assistant Chief Deputy and a seventh employee to lieutenant. Respondent Lombard became Sheriff on January 1, 1974 and he demoted the seven appointees to their former ranks. The latter two accepted that demotion. The five petitioners seek reinstatement and back pay. Various other county officials are joined with Sheriff Lombard as respondents but they do not contest petitioners' claims.

The litigation questions the validity of a public employment contract executed by the former Sheriff and the county manager and approved by resolution of the County Legislature in September, 1973. The agreement was supplemental to a gen-

eral contract governing the employment of all Monroe County employees represented by the Civil Service Employees Association. That general contract extended for a two-year term from January 1, 1973 to December 31, 1974. The supplemental agreement covered only the Sheriff's deputies and expired with the general contract in December, 1974.

Petitioners had been employed by the Sheriff's Department for more than two years and they claim that their demotions violated paragraph 17 of the supplemental agreement which provides: "Sheriff's employees who have been employed by the Sheriff for two (2) years or longer, shall not be suspended, discharged or receive a disciplinary demotion without just and sufficient cause."

After their demotions petitioners elected to pursue the grievance procedure set forth in the contract but then initiated this article 78 proceeding without proceeding to the final step, arbitration.

The Sheriff contends that the supplemental agreement is void because it was not legally adopted by the Legislature and even if legally adopted, his predecessor could not execute a contract which was binding on him. In the alternative, he contends that if the agreement is valid, petitioners' relief is by arbitration as provided by the terms of the agreement. Special Term granted the petitions and ordered petitioners reinstated with back pay.

The petitions do not present grounds for relief under article 78, but since the parties are before the court seeking a declaration of their rights under the contract, we treat the proceeding as an action for declaratory judgment (CPLR 103, subd [c]; *Matter of Phalen v Theatrical Protective Union No. 1,* 22 NY2d 34; *Erie County Water Auth. v County of Erie,* 47 AD2d 17).

It is the Sheriff's position that the County Legislature was required to approve this contract by local law for two reasons: (1) the county is empowered by the Constitution and statute to enact local laws pertaining to its officers and employees (N.Y. Const. art. IX, § 2, subd [c]; Municipal Home Rule Law, § 10, subd 1), and (2) the agreement curtails the powers of the Sheriff (Municipal Home Rule Law, § 23, subd 2, par f).

Section 14 of article XIII of the Constitution provides that the State Legislature shall have authority over hours and wages of county employees. That power has been specifically delegated to the local legislature by statutes under which the

county may determine the positions of employment (County Law, § 204), pay of employees (§ 205), hours of employment (§ 206), vacations and sick leaves (§ 207), and insurance benefits (General Municipal Law, § 92-a). The concurrence of the County Legislature in this agreement was necessary because it contained provisions on these subjects relating to deputy sheriffs which only the county, acting through its legislature, could authorize (presumably the county was the joint employer of the deputies [see Civil Service Law, § 201, subd 6, par (b); *Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept.*, 37 AD2d 437]). Thus, legislative action was required before the agreement was enforceable (Civil Service Law, § 201, subd 12; § 204-a; cf. *John E. Creedon Police Benevolent Assn., Inc. of Utica v City of Utica*, 44 AD2d 890).

The County Legislature acts by resolution or local law (County Law, § 153, subd 1; cf. *CSEA v City of Troy*, 36 AD2d 145, 147, affd 30 NY2d 549). Both are legislative acts but local laws are the more formal of the two and must be adopted in accordance with provisions of article 3 of the Municipal Home Rule Law. But just because the county may act by local law does not mean that it must do so. The subject matter of the proposed legislation determines whether a local law or a resolution is appropriate, for local laws are either specifically required by statute or charter (Municipal Home Rule Law, § 2, subd 9) or they are employed when the local government chooses to exercise its power to supersede State statutes which do not in their terms and effect apply alike to all counties (Municipal Home Rule Law, § 22; cf. *Browne v City of New York*, 241 NY 96, 115–122). The subjects of this agreement are within the scope of the statutory powers delegated to the county. The agreement does not attempt to enlarge or change the county's powers and it may be approved by resolution. Thus, unless the local legislature's action in approving the contract curtailed the Sheriff's power and required passage of a local law subject to mandatory referendum, the resolution was valid and the public employers were bound by the contract (Municipal Home Rule Law, § 23, subd 2, par f).

The Sheriff has statutory authority to hire and fire his employees (County Law, § 652, subd 2). Undoubtedly, he gave up some flexibility in this respect by agreeing to this employment contract,[1] but he did so because that was his legal

---

1. On analogous facts involving adoption of civil service for Sheriff's deputies, it has been held that the restrictions apply only to the procedure for appointment or

responsibility and not because of any act of the local legislature. The Civil Service Law (§ 200 *et seq.,* the Taylor Law) provides that public employees may join employee organizations and negotiate and execute employment agreements with their employers. It also provides that public employers must negotiate the terms and conditions of employment with qualified employee organizations in good faith (Civil Service Law, §§ 204, 209-a). The State Legislature granted the Sheriff broad power to hire and fire his employees, but it also qualified the exercise of that power by the provisions of the Taylor Law. The County Legislature was not authorizing or passing upon the Sheriff's acts or in any way limiting his powers by this resolution. It acted independently of the Sheriff and only because the subject matter of the contract required that it act.

Generally it is true, as respondent contends, that a public official may not bind his successor to a contract extending beyond his term of office (see *Mack v Mayor,* 37 Misc. 371, affd on opn of Trial Term 82 App Div 637, affd 176 NY 573; *Edsall v Wheler,* 29 AD2d 622; *Ferkin v Board of Educ. of Union Free School Dist. No. 25,* 253 App Div 751; *Abrams v Horton,* 18 App Div 208). A public contract may extend beyond the term of the officer or officers executing it, however, if there is a clearly expressed legislative intent to grant such power *(Murphy v Erie County,* 34 AD2d 295, 298, affd 28 NY2d 80; Ann 47 ALR3d 19, 120–124; see, also, 40 NY Jur, Municipal Corporations, § 809).

The Taylor Law does not specify or limit the period of public employment contracts. The statute only provides that the parties may make contracts which bind them "for the period set forth therein" (Civil Service Law, § 201, subd 12; see *Town of Kent Police Benevolent Assn. v Town of Kent,* 42 AD2d 747, a five-year contract). The term was left to the discretion of the contracting parties and nothing contained in the law suggests that the Legislature intended to restrict the period of such contracts to an elected public employer's time in office. Manifestly such periods have no necessary relationship to employees' terms and conditions of employment.

The policy and purpose of the Taylor Act have been rehearsed so frequently that they scarcely need to be repeated

removal and do not conflict with the Sheriff's power to hire and fire generally *(Amico v Erie County Legislature,* 36 AD2d 415, affd 30 NY2d 729).

here (Civil Service Law, § 200; *Matter of Sanford v Rockefeller,* 35 NY2d 547, 564–565; *CSEA v Helsby,* 31 AD2d 325, affd 24 NY2d 993; *Matter of County of Ulster v CSEA Unit of Ulster County Sheriff's Dept.,* 37 AD2d 437, 439). Public employees were given the right to organize and contract upon subjects involving their employment because of the legislative desire to bring about harmonious employer-employee relationships, encourage professionalism and reduce work stoppages in government employment. It would be a peculiar statute which attempted to promote efficiency in government employment by conditioning managerial decisions on public referenda or which limited employer-employee agreements to artificial timetables dictated by the election calendar.

In summary, we hold that this contract was properly executed by the Sheriff and the county and that it bound not only the Sheriff who executed it but his successor in office.

Special Term, after finding the contract valid, held as a matter of law that the demotions of petitioners were "disciplinary". As we view the case, the meaning of the contract term, "disciplinary demotions" is not clear, and the finding that respondent acted for disciplinary reasons is not established by the record. Respondent asserts several legitimate reasons for his actions which are unrelated to discipline among them the contentions that his predecessor made more appointments than there were vacancies, that one appointee had been on sick leave, ill with a severe heart condition for over a year and, therefore, was not qualified for promotion, and that petitioner Sexstone was promoted in spite of an extensive and questionable sick leave record and a recent finding of insubordination. In short, he contends that his action in demoting petitioners was based upon just cause and not related to discipline. His allegations merit careful consideration.

Before initiating these proceedings petitioners pursued their grievance procedure remedies under the agreement but stopped short of arbitration. Under different circumstances we might treat respondent's affirmative defense that the matter is subject to arbitration as a motion to compel arbitration under the contract (CPLR 103, subd [c], 7503, subd [a]). However, a party may not be compelled to arbitrate in the absence of an agreement to do so *(Matter of Writers Guild of Amer. East [Prockter Prods.],* 1 NY2d 305; *Hull Dye & Print Works v Riegel Textile Corp.,* 37 AD2d 946). The arbitration clause in this agreement does not prohibit court proceedings and really

does no more than grant a unilateral option to the employee to submit his case to arbitration if he is unsatisfied with the results of preliminary grievance proceedings. We, therefore, remit the matter to Supreme Court for a plenary trial to construe the terms of the agreement and determine the rights of the parties under it (see *Matter of Rapp v Onondaga Community Coll.,* 45 AD2d 922).

Judgment should be entered declaring the contract valid and the matter should be remitted to Trial Term, Monroe County, for determination of petitioners' rights under it.

MOULE, J. P., CARDAMONE, MAHONEY and WITMER, JJ., concur.

Judgments appealed from unanimously vacated, without costs, judgments entered declaring contract valid, and matter remitted to Trial Term, Monroe County, for further proceedings in accordance with opinion by SIMONS, J.