Leon D. Lazer, J.
By separate motions, the Board of Education of the Brookhaven-Comsewogue Union Free School District (the "board”) has moved to stay the Port Jefferson Station Teachers Association (the "teachers”) from proceeding to arbitration on the issue of sabbatical leave, and to consolidate the stay motion with the board’s action for a judgment declaring invalid the collective bargaining agreement (the "agreement”) between the parties which became effective on July 1, 1975. In turn, the teachers have moved to dismiss the declaratory judgment action on the ground that it does not state a cause of action. During the pendency of these motions, *28 the board has moved to supplement its original declaratory judgment complaint by adding a new cause of action to it.
Since adjudication of the merits of the declaratory judgment action is dispositive of all of the pending motions, the complaints in that action will be considered first. The gravamen of the original complaint is that the agreement is invalid because it binds the board "in perpetuity.” In its proposed supplemental complaint, however, the board alleges (as an alternative cause of action) that on June 28, 1976 it exercised its right to request a new representational election and thus terminated the agreement. The first two articles of the agreement contain all the language which bears upon the duration issue.
Subdivision A of article II of the agreement provides in pertinent part that: "A. It is contemplated that the terms and conditions of employment provided in this Agreement shall remain in effect until altered by mutual agreement in writing between the parties or through other provisions provided for in the Agreement”.
In subdivision B, however, duration appears connected to recognition by virtue of the following language: "This Agreement shall remain in full force subject to amendment for the duration of the recognition of PJSTA as the representative of professional certified personnel in the District. No later than February 15, 1976 the parties agree to enter into good faith negotiations over Amendments to this Agreement”.
The recognition section of the agreement (art I) provides as follows:
"A. The Board of Education, Union Free School District No. 3, Port Jefferson Station, New York, * * * hereby recognizes the Port Jefferson Sta. Teachers Association, Inc. as the exclusive negotiating agent for the professional certified personnel of this district. * * * This recognition shall extend until June 30, 1976 and shall be automatically renewed at that time for successive periods of two (2) years except as stated in 'B’ below. The Board agrees not to negotiate with any other individual or organization for members of the negotiating unit other than the Association for the duration of this Agreement.
"B. Within thirty (30) days of the end of the two (2) year period of recognition provided for in this Agreement, upon the written request of the Board or of at least thirty (30) percent of the members of the negotiating unit, the Board may hold *29 an election to determine what organization shall represent teachers in this district. If no such request is received within thirty (30) days of the termination of this Agreement, this Agreement shall automatically be renewed.”
The board’s original declaratory judgment complaint pleads that articles I and II have vested in the teachers the sole power to terminate the agreement, thus binding the board forever with respect to all provisions (except for the salary schedule) unless the teachers agree to amendments through the collective bargaining process or cease being the bargaining representative. In its newly proposed additional cause of action, the board states that acting under subdivision B of article I it has requested a representational election, thus terminating the contract. Although the board’s position concerning the availability of subdivision B of article I as a means of terminating the agreement has soundness, the June, 1976 request for an election is untimely.
Subdivision A of article I of the agreement provides that recognition of the teachers extends until June 30, 1976, "and shall be automatically renewed at that time” for successive periods of two years, except as provided in subdivision B. The latter paragraph provides that "at the end of the two (2) year period of recognition provided for in this agreement” on written request of the board or of at least 30% of the members of the negotiating unit made within 30 days the board may hold a representational election (emphasis supplied). Since the inception date of the agreement was July 1, 1975, subdivision B of article I entitles the teachers to a three-year period of unchallenged recognition.
The three-year clause is consistent with section 208 of the Civil Service Law which provides that a recognition agreement for a term in excess of three years shall be treated as if the period were three years. Although the section also provides that a representational challenge may be made during the last seven months of the contract, this has been construed to apply only to challenges by other labor organizations (Town of Kent Police Benevolent Assn. v Town of Kent, 42 AD2d 747). Since the board’s June, 1976 request for a representational election is two years premature, the second cause of action of the proposed supplemental complaint is meritless and the motion for leave to amend the complaint must be denied.
Turning then to the seminal claim that the agreement is *30 void because it binds the board perpetually, that body’s request for an election has focused the issue on the meaning of subdivision B of article II. It is clear from the first sentence of that subdivision that the length of the contract is coextensive with the period of recognition of the teachers, but whether recognition (and therefore the agreement) is terminated by a request for election, or by a change of representation after election, remains obscure. The final sentence of subdivision B of article I states that "If no such request [for an election] is received within thirty (30) days of the termination of this agreement, the agreement shall be automatically renewed.” This language implies that the making of such a request actually terminates the agreement, and the implication is supported by the rules of contractual construction.
Generally, in the absence of statute conferring such power, an effort to bind a municipality in its governmental capacity beyond the tenure of the board which made the contract is void (Edsall v Wheler, 29 AD2d 622; Abrams v Horton, 18 App Div 208), and where there is reasonable doubt as to the existence of the power it must be denied (Edsall v Wheler, supra). However, the general rule does not apply to municipal labor agreements. Unlike the Taft-Hartley Act (see US Code, tit 29, § 158, subd [d]), the Taylor Law (Civil Service Law, art 14) provides no method for terminating a contract of indefinite duration, nor does it specify or limit the period of public employment contracts. It only provides that the public employer and the employee organization may make contracts which bind them "for the period set forth therein” (Civil Service Law, § 201, subd 12). Section 208 explicitly sanctions contracts which have a duration of three years and it contains no bar to contracts of longer duration (see Town of Kent Police Benevolent Assn. v Town of Kent, supra, [five-year contract]). The Taylor Law leaves the term of the agreement to the discretion of the contracting parties and nothing contained in it suggests that the Legislature intended to restrict the period of such contracts to an elected employer’s time in office. Therefore, such periods of office have no necessary relationship to an employee’s terms and conditions of employment (Reese v Lombard, 47 AD2d 327).
However, neither Kent nor Reese should be read to sanction a municipal labor contract of perpetual duration. Such municipal contracts are illegal (Sun Printing & Pub. Assn. v Mayor, Aldermen and Commonality of City of N. Y, 152 NY 257) as is *31 a labor agreement which binds a public body indefinitely and is terminable solely at the discretion of the other party. Such a contract deprives the public body of equal bargaining power and frustrates the statutory imperative of section 209 of the Civil Service Law that the parties negotiate in "good faith.” There is a school of juridical thought, however, which holds that, in the absence of statute, and having regard to the circumstances, a municipal contract of indefinite duration can be construed as continuing for a reasonable time (see 1A Antieau, Municipal Corporation Law, § 10:15; 10 McQuillin, Municipal Corporations, § 29.102; Levy Court of Kent County v City of Dover, 325 A2d 376 [Del]). The rule that the length of a contract must be reasonable is a variation of the common law relating to contracts lacking a fixed termination date: where it can be implied that such a contract is to continue for a reasonable time, the contract is not terminable at will (Colony Liq. Distr. v Jack Daniel Distillery, 22 AD2d 247; see 10 NY Jur, Contracts, § 412). In this State, it has been held that at least some subjects of a municipal labor agreement must be limited to "a reasonable period of time” (Matter of Burke v Bowen, 40 NY2d 264; see, also, Matter of Board of Educ. v Yonkers Fed. of Teachers, 40 NY2d 268). The following generally accepted rules of construction permit the instant contract to be deemed terminable by either party at two-year intervals, thus rendering the agreement reasonable in length.
If a contract is open to two constructions, one of which will render it lawful and the other unlawful, it must be given the former construction if reasonable and permissible (Longley v Coons, 244 App Div 391, affd 268 NY 712; Friedman v State of New York, 242 App Div 314, affd 268 NY 530). Every contract implies good faith and fair dealing and the court will, if possible, avoid any construction that is unreasonable or inequitable, and particularly one that will place one party at the mercy of the other (Fair Pavilions v First Nat. City Bank, 19 NY2d 512; Cross Armored Carrier Corp. v Valentine, 49 Misc 2d 917, affd 28 AD2d 1090; Campbell v State of New York, 240 App Div 304). Indeed, a construction which will sustain a contract is preferred over one which will defeat it (Silverman v Alpart, 282 App Div 631). The issue of whether the instant agreement is terminable biennially by the request of either party for a representational election must be resolved in accordance with the public policy which encourages equal bargaining positions between parties to a collective bargaining *32 contract. Thus, either party may end the contract by making a timely election request. Should a minority of the membership of the teachers invoke the provision contrary to the wishes of the majority and the board, it is simple enough for the parties to renew the agreement after the election.
This determination, of course, renders academic the heated controversy between the parties over continuation of contractual provisions during negotiations. Once the contract is terminated, its provisions are not automatically preserved (see Matter of Board of Educ. [Poughkeepsie Public School Teachers Assn.], 75 Misc 2d 931, affd 44 AD2d 598; Matter of Messano v Board of Educ., 39 AD2d 579).
In sum, the multiple pending motions are determined as follows. The motion to dismiss the declaratory judgment must be denied (see St. Lawrence Univ. v Trustees of Theological School of St. Lawrence Univ., 20 NY2d 317) and the judgment to be entered in that action shall declare that the collective bargaining agreement between the parties dated July 1, 1975 is a valid contract which is terminable by either party on June 30, 1978 and biennially thereafter upon the giving of notice of a demand for a representational election within 30 days of June 30, 1978 and within 30 days of the end of each biennial period thereafter. The motion to amend the declaratory judgment complaint is denied as is the motion to consolidate that action with the stay proceeding. The latter proceeding is dismissed because the collective bargaining agreement provides for arbitration of all matters in dispute. Therefore, the sabbatical leave controversy may be submitted to arbitration (see Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.] 37 NY2d 614). The board’s plea that the district faces a financial crisis is a matter for the arbitrator rather than the court (see Matter of Board of Educ. v Yonkers Fed. of Teachers, 40 NY2d 268, supra).