OPINION OF THE COURT
C. Raymond Radican, J.
This is a proceeding in which the petition alleges six causes of action, all of them seeking to enforce under various theories an alleged agreement between Innis O’Rourke and his surviving spouse, Blanche, that in consideration of Innis executing a will in which he gave to his wife the maximum marital deduction in trust with a general power of appointment, she, in turn, agreed not to exercise such power, in which event the principal of the marital trust would be distributed as part of the residue for the benefit of Innis’ children by a prior marriage. It is further alleged that this agreement between Innis and Blanche was "entered into before, and communicated to the attorney/draftsman Waldo Hutchins, III” who prepared decedent’s will dated December 11, 1970, in furtherance of the arrangement.
Following the decedent’s death, the petition alleges that Blanche executed a will dated May 2, 1977, which exercised the power of appointment in favor of her children from her prior marriage and contrary to the alleged agreement with the decedent. A subsequent will dated April 15, 1985 executed by Blanche which also similarly exercised the power in favor of her children has been admitted to probate in California and letters testamentary have been granted to her son, Frederick D. Montgomery.
The first cause of action alleges a breach of contract of the alleged agreement by Blanche not to exercise her power of appointment; the second and third causes of action allege that the agreement was either a release of the power by Blanche or a contract to release the power; the fourth cause of action seeks to impose a constructive trust; the fifth and sixth causes of action request restitution.
The only affirmative defenses listed in Blanche’s answer question both jurisdiction of the subject matter and of persons, the latter on the ground that all of the takers in default of the exercise of the power of appointment were not initially made parties. The respondent thereafter conceded the jurisdiction of this court provided all the takers in default of appointment were made parties, which was done. In addition, the parties have stipulated to a stay of the California proceeding pending *642 completion of the New York litigation. Accordingly, it would appear that petitioner’s motion requesting dismissal of the affirmative defenses and for an order restraining the California proceedings has been rendered moot. The sole matter presently before the court then is the respondent’s cross motion for summary judgment.
EPTL 10-5.3 provides that a donee of a power of appointment which is not presently exercisable (referring generally to a testamentary power) cannot contract to make an appointment and such a contract, if made, cannot be the basis of an action for specific performance or damages, but the promisee can obtain restitution of the value given by him for the promise unless the donee has exercised the power pursuant to the contract. It is stated that the reason for this rule is that the donor of the power, usually a testator, has manifested an intent that the selection of the appointees and the determination of the interests they are to receive is to be made in light of the circumstances that may exist on the date the power becomes exercisable. In other words, it is the intent of the donor that up to the last moment of the donee’s life, he is to have the power to deal with the share as he thinks best, and to permit him to bargain away that right would defeat the donor’s purpose (Farmer’s Loan & Trust Co. v Mortimer, 219 NY 290). EPTL 10-5.3, however, specifically excludes from its coverage the ability of a donee of a power of appointment not presently exercisable to release it pursuant to EPTL 10-9.2 except that where the donor has designated takers in default, a release must serve to benefit all of such takers in default as provided by the donor.
Although in his sixth cause of action petitioner requests restitution pursuant to EPTL 10-5.3 from Blanche’s estate should the court construe the alleged agreement as a contract to appoint, the second and third causes of action allege that the arrangement was either a release or a contract to release the power. EPTL 10-9.2 does authorize the release of any power of appointment by a written instrument signed by the donee and delivered as provided by the statute and there is considerable authority to the effect that a contract not to appoint is, in fact, the equivalent of a release (Restatement [Second] of Property § 14.3 [3]; 2 Simes and Smith, The Law of Future Interests § 1016; Annotation, Agreement as to Exercise of Power, 163 ALR 1449; cf., Seidel v Werner, 81 Misc 2d 220, affd 50 AD2d 743). In the past, criticism was addressed to the inconsistency that although a donee could not contract to *643 appoint a testamentary power, he could release it and in some instances the release could be done in a way to benefit some of the persons who were takers in default, but not all. To remedy this inconsistency, the Legislature amended EPTL 10-5.3 to require that no release is valid unless it benefits all the default takers as provided by the donor (see, Recommendation of Law Rev Commn, 1977 Report of NY Law Rev Commn, 1977 NY Legis Doc No. 65 [C]). Accordingly, there should be no impediment to a holding in New York that a contract not to exercise the power is the equivalent of a release and the court so holds. However, as previously mentioned, EPTL 10-9.2 requires that a release of a power be in writing. The petitioner, recognizing this requirement, argues in the alternative that while the statute requires a release per se to be in writing, it does not explicitly require a contract to release to be in writing. Casner, in his extensive work on the law of property, in discussing similar State statutes requiring a writing observes: "For the most part these statutes appear sufficiently broad to cover releases by joining in a conveyance and by contract not to exercise, as well as instruments of formal release.” (5 Casner, American Law of Property, § 23.29.) The court is similarly of the opinion that the New York statute is broad enough to encompass not only an instrument of release but a contract to release as well. Inasmuch as the court has found a contract not to appoint is the equivalent of a release, the Statute of Frauds would be a defense (EPTL 10-9.2). In this regard the respondent has attempted to plead the Statute of Frauds in an amended answer made as of course (CPLR 3025 [a]), which has been rejected by the petitioner as untimely. While the parties dispute whether the amended answer was in fact timely, the respondent, nevertheless, has requested in his papers leave to file an amended answer and counterclaim raising the affirmative defense of Statute of Frauds. It is well settled that leave to serve an amended answer pursuant to CPLR 3025 should be freely granted unless the amendment sought is palpably improper or insufficient as a matter of law or unless prejudice or surprise directly results from delay in serving such amendment (De Gradi v Coney Is. Med. Group, 172 AD2d 582; see also, Rogoff v San Juan Racing Assn., 77 AD2d 831, affd 54 NY2d 883). Here, the amendment sought to be pleaded has merit and there is no surprise or prejudice to the petitioner whose papers acknowledge the question. Accordingly, leave to amend the answer to plead the affirmative defense of Statute of Frauds is granted.
*644 The petitioner, however, argues that additional discovery is essential. While it is true that CPLR 3212 (f) authorizes the court to deny summary judgment or grant a continuance pending discovery when facts essential to justify opposition may exist but cannot be stated, here there is little or no indication as to what "essential” facts the petitioner believes exist that would justify the further discovery (see, Billy v Consolidated Mach. Tool Corp., 51 NY2d 152, rearg denied 52 NY2d 829). It would appear that the only one in close proximity to this matter to speak with any degree of knowledge as to the circumstances surrounding the decedent’s preparation of his will is the draftsperson, Waldo Hutchins, III, Esq. In an affidavit submitted on behalf of the petitioner on this motion, Mr. Hutchins states: "It is true that I do not remember the exact words used by Mr. and Mrs. O’Rourke in our meeting of December, 1970. However, I do recollect the substance of that conversation, as well as the substance of statements made to me by Mrs. O’Rourke after Mr. O’Rourke died.” It is fairly clear that if a written agreement existed, no one would be in a better position to reveal it than Mr. Hutchins. Yet his affidavit speaks merely of "words” used by the parties and "conversations,” leading to the conclusion that in fact no written agreement was entered into by the parties. Accordingly, if the first cause of action for a breach of contract were the only action alleged, the court would be inclined to dismiss it based upon the affirmative defense of the Statute of Frauds. That is equally true of the second and third causes of action based upon a release of the power of appointment. However, since disclosure will be allowed as to the fourth cause of action as noted hereafter, the motion with respect to actions first through third is denied at this time with leave to renew following completion of discovery, if the respondent is so advised.
The fourth cause of action requests the imposition of a constructive trust. It is true that where a testator has received property from others, now deceased, equity will intervene under certain circumstances to declare the surviving testator a trustee in order to carry out a promise on the strength of which the property has been received (Trustees of Amherst Coll. v Rich, 151 NY 282). However, even though the Statute of Frauds will not prevent the court from imposing a constructive trust, nevertheless, decisional law requires clear evidence of the existence of a promise, either express or implied, and such a promise is not established simply by showing a confi *645 dential relationship exists between the persons involved (Oursler v Armstrong, 10 NY2d 385).
The primary defenses to the imposition of a constructive trust in cases involving similar fact patterns have been its illegality and the doctrine of unclean hands in that such an agreement involves a fraudulent evasion of estate taxes. Generally, no marital deduction will be allowed with respect to a "terminable interest” (Internal Revenue Code [26 USC] § 2056 [b]). In the context of a marital deduction trust with a general power of appointment, the surviving spouse’s general power of appointment must be exercisable alone and in all events. The purpose of the terminable interest rule is to ensure that property escaping estate taxes on the death of the decedent spouse will be subject to tax on the subsequent death of the surviving spouse (Weinstock, Planning an Estate § 4111 [3d ed]). It is argued that since the alleged agreement restricted the surviving spouse’s exercise of her general power of appointment, it was a terminable interest which would have resulted in a disallowance of a marital deduction if known to the taxing authorities, resulting in a fraud on the government.
The law is well settled that an agreement made at the inception for an illegal purpose and so contemplated by both parties is unenforceable (Dodge v Richmond, 10 AD2d 4). Although generally affirmative defenses such as illegality must be pleaded where they would take the adverse party by surprise if not pleaded (CPLR 3018 [b]), here, the papers reflect petitioner’s awareness of the issue of illegality and, accordingly, the failure to plead it should not prevent its assertion (Carlson v Travelers Ins. Co., 35 AD2d 351). In addition, the doctrine of unclean hands need not be pleaded as a defense (Richards v Levy, 40 AD2d 1055), its application not being dependent on the pleadings or the diligence of the parties (Simmons v Benn, 96 AD2d 507).
In general, forfeitures by operation of law on the basis of illegality of contracts are disfavored, particularly where a defaulting party seeks to raise illegality as " 'a sword for personal gain rather than a shield for the public good’ ” (Lloyd Capital Corp. v Pat Hencher, Inc., 80 NY2d 124, 128). Moreover, the law presumes in favor of legality of contracts and does not assume an intention to violate the law (Friedman v State of New York, 242 App Div 314, affd 268 NY 530).
In Frederick v Frederick (44 Ill App 3d 578, 358 NE2d 398), *646 the court held that a provision of an antenuptial agreement in which the husband stated he would, in order to escape Federal estate taxes, provide that his wife would have power of appointment over one half of his residuary estate and that the wife would agree not to exercise the power of appointment but rather would permit the property to pass to the husband’s children was an illegal attempt to defraud the United States Government and unenforceable. In the Frederick case however, the agreement itself left no doubt whatsoever about its illegal intent since it stated in part (44 Ill App 3d, at 579-580, 358 NE2d, at 400): "[t]hat in order to escape Federal Estate Taxes the First Party in his Will shall provide that the Party of the Second Part shall have a power of appointment over one-half of his residuary estate * * * but the said Second Party hereby agrees and covenants that she will not exercise said power of appointment but shall permit the same to pass upon her death to the children of the First Party” (emphasis supplied).
In contrast to the Frederick case (supra), two California cases, Redke v Silvertrust (6 Cal 3d 94, 490 P2d 805) and Platt v Wells Fargo Bank Am. Trust Co. (222 Cal App 2d 658, 35 Cal Rptr 377), found that there was no fraudulent intent to evade taxes or to conceal the existence of the agreement from the taxing authorities for the purpose of improperly obtaining the marital deduction. As noted in the Platt case, questions of "intent” and "purpose” are ordinarily questions of fact to be determined by the trial court. This is similarly true of the doctrine of unclean hands which is a question of intent and motive (55 NY Jur 2d, Equity, § 123).
The case of Matter of Frank (52 AD2d 335) does not compel a contrary holding. In that case, decedent’s son contested dispositions under an inter vivos trust which provided for a marital deduction trust "A” with a general power of appointment and a "B” trust with income to the wife for life remainder to charities. The son alleged that the trust involved an excessive gift to charity under EPTL former 5-3.3 in that the wife was bound by a secret arrangement not to exercise her power of appointment, so that the marital trust would fall into the residuary trust with remainder to charities. The primary holding by the Court was that the inter vivos trust did not violate the statute limiting testamentary dispositions to charities. While the Court stated that "any secret duty on [the wife’s] part to appoint in favor of trust 'B’ would be repugnant to the stringent qualifications for the marital de *647 duction” (at 341), this was merely dicta and was obviously added as an indication that parties are not presumed to violate the law.
Since there are questions of fact to be determined in the fourth cause of action which seeks to impose a constructive trust, the motion for summary judgment relating to that cause of action is denied.
The sixth cause of action for restitution pursuant to EPTL 10-5.3 (a) is dismissed. While pursuant to EPTL 10-5.3 restitution may be sought where a contract to appoint is unenforceable, the court has already held that the alleged agreement not to exercise the power of appointment is a release and not a contract. Accordingly, the restitution provided under the section is not applicable.
The fifth cause of action merely states a "cause of action for restitution.” In general, restitution is not a form of action but a description of relief afforded which may be granted in many different types of cases including the equitable action for imposition of a constructive trust (Dobbs, Remedies § 4.1 [Horn Book Series]). Since the petitioner has already pleaded a constructive trust in the fourth cause of action, the fifth cause is dismissed.
One further comment is required. Although the petitioner questions the decedent’s mental capacity to exercise the power in her 1985 will and maintains this court has jurisdiction of that question despite its admission to probate in California, no similar question is addressed to the 1977 will which admittedly also purported to exercise the power in contravention of the alleged agreement. Moreover, there is no pleading before the court requesting any such relief.