In the Matter of the Estate of JAMES H. SNOWDEN, Deceased.

Surrogate's Court, Suffolk County, July 24, 1931.

*White & Case*, for Bankers Trust Company.

*Macklin, Brown, Lenahan & Speer*, for Beulah M. Snowden.

*Vincent H. Rothwell*, for Marian A. Davidson.

*Nathan O. Petty*, special guardian.

PELLETREAU, S. The court is asked to construe certain provisions of the will of James H. Snowden. Decedent's children Marian Snowden and Janet Snowden are by his first marriage. The parents were divorced and the first wife still survives. She has remarried and her name now is Marian Adair Davidson. The decedent also remarried and is survived by his second wife, Beulah M. Snowden. This controversy relates particularly to the following clauses of the will:

"*Second.* I give and bequeath unto my daughters, Marian Snowden and Janet Snowden, the miniature of my mother, the furniture in their bed rooms, the furniture and pictures in the dining room of my apartment, the furniture in my own bed room of my apartment, any china and silver marked with the initials of their mother, all books bearing the name plate ' James H. Snowden and Marian Adair Snowden,' and the two paintings of landscapes formerly owned by my parents; my said daughters to make the division of said articles between themselves.

"*Third.* I give and bequeath unto my son, James H. Snowden, Jr., my gold watch, all my dress shirt studs, and other personal jewelry. I also give to my said son, James H. Snowden, Jr., the painting by Steele, a gift to me from Mrs. George G. Snowden."

"*Fifth.* I direct that my wife, Beulah M. Snowden, shall at her option be permitted to reside in my residence at Sands Point for a period of two years from the date of my death; all taxes and cost of keeping my said residence in usual and ordinary repairs to be paid out of the income from the residue of my estate.

"*Sixth.* I give and bequeath unto my wife, Beulah M. Snowden, if she be living at the time of my decease, one-third of all the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever situate, absolutely and forever. If my said wife, Beulah M. Snowden, shall pre-decease me, I give and bequeath out of said one-third of the rest and residue of my estate the sum of One hundred thousand dollars ($100,000.00) to any child or children of said Beulah M. Snowden living at the time of my decease, in equal shares, and the balance of said one-third of the estate after deducting the sum of One hundred thousand dollars ($100,000.00) I direct shall be added to the share of the rest and residue of my estate hereinafter given and devised in trust for the benefit of my children.

"*Seventh.* I give and bequeath unto the Bankers Trust Company, of the City of New York, as Trustee, the sum of One hundred thousand dollars ($100,000.00), to invest and keep the same invested and to pay over the net income to my niece, Anna Katharine Bolton Chalaire (wife of Walter Chalaire), if she be living at the time of my decease, and upon her death, or if she be deceased at the time of my death, to pay over the said sum of One hundred thousand dollars ($100,000.00) in equal shares to and among her children living at the date of distribution and the issue of such of them as may then be deceased, the issue taking *per stirpes* the share which their parent would have taken, if living.

"In case the said Anna Katharine Bolton Chalaire shall die without leaving issue her surviving, the said sum of One hundred

thousand dollars ($100,000.00) shall revert to and become part of my residuary estate.

" Provided, however, that if the sum of One hundred thousand dollars ($100,000.00) shall be more than one-tenth of the net residue of my estate after payments of debts, I direct that the legacy herein contained shall be reduced to an amount equal to one-tenth of the net residue of my estate.

" I direct that until such time as the said trust fund shall be turned over to my said Trustee, my executor shall pay in quarterly installments to Anna Katharine Bolton Chalaire the sum of Five thousand dollars ($5,000.00) per annum, computed from the time of my death to the time when the said trust fund shall be paid over to the Trustee.

" *Eighth.* All the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever, including any legacy or bequest herein contained which may lapse, I give, devise and bequeath unto the Bankers Trust Company of the City of New York, in trust nevertheless:

" 1. To divide the trust property into equal shares for the benefit of my children, Marian Snowden, Janet Snowden, and James H. Snowden, Jr., and to hold said shares upon separate and independent trusts, and to manage, sell, invest and reinvest the same and every part thereof in the manner hereinafter specified, and to collect, recover and receive the dividends, income and profits upon each of said shares, and after deducting the commissions of the Trustee, as hereinafter provided, and the proper and necessary expenses in connection with the administration of the trusts, to apply the income, or such part thereof as the Trustee in its discretion may deem advisable or expedient, upon each share for the support, maintenance, education and benefit of the child for whose benefit the share is held in trust until such child shall attain the age of twenty-one years, when the Trustee shall thereupon pay over to her or him, as the case may be, all income theretofore accumulated upon such share and remaining undistributed in the hands of the Trustee, and thereafter to pay the entire income upon the share to such child in quarterly installments of equal amount, or as nearly equal as possible, for and during the term of her or his natural life.

" Upon the death of any one of my said children for whose benefit a share shall be set apart in trust, as above provided, the trust for such child shall terminate, and in the event of such child leaving a last will and testament or writing in the nature thereof, the Trustee shall pay over the principal of the share held in trust in accordance with the last will and testament of such deceased

child, but only to and among mother and or issue of the child so dying in such proportions and at such times as such deceased child may by its last will and testament direct and appoint.

" In case of the death of any one of my said children for whose benefit a share shall be set apart in trust, as above provided, without exercising said power of appointment by any last will and testament or writing in the nature thereof the Trustee shall pay over the principal of the share held in trust to her or his issue then living, such issue taking *per stirpes* and not *per capita;* and in the event of the death of any one of my said children for whose benefit a share shall be set apart in trust, without leaving issue then living, the Trustee shall pay over the principal of the share held in trust to the said children above named then living and to their issue, if either of them shall be dead, in equal shares, such issue taking *per stirpes* and not *per capita* the share the parent would have taken if then living.

" *Ninth.* I appoint Marian Adair Davidson to be the guardian of the persons of my children, Marian Snowden, Janet Snowden, and James H. Snowden, Jr., during their minorities," etc.

" *Eleventh.* I authorize and empower my executor, during the administration of my estate, and my trustee thereafter, to grant, sell and convey any and all of the property, real and personal, not herein otherwise disposed of, at such time or times, at public or private sale, at such prices, and upon such terms as to cash or upon credit, as it may deem best, and to make, execute and deliver to the purchaser or purchasers thereof contracts, deeds, bills of sale, and all other instruments of writing necessary or proper to carry this provision into effect, without liability on the part of the purchaser for the application of the purchase money," etc.

" *Twelfth.* I nominate, constitute and appoint Bankers Trust Company, of the City of New York, executor of and Trustee, under this my will, and guardian of the estates of my children who shall not have attained the age of twenty-one (21) years at the time of my decease."

The will is a long one. To ascertain from the will itself the testator's intentions and owing to the changed situation of the estate, to make it legally operative, is my task. If people would make shorter and more simple dispositions of their estates there would be less machinery of administration and in most cases the beneficiaries would fare better. The controversy as to construction and the effect thereof when reduced to the essentials comprises six questions.

*First.* Who is entitled to the possession of the dining room furniture in storage at the Lincoln Storage Warehouse in New York?

I am of the opinion that this furniture is the property of Mrs. Marion Adair Davidson who was Mrs. Snowden No. 1. It was a wedding present to her when she married the decedent.

The testimony of Marian A. Snowden in that matter is admissible. She is not interested in the event. Should this furniture not be awarded to Mrs. Davidson it would go to Beulah M. Snowden, his second wife, under the 5th clause of the will.

The *second* question: This question relates to the furniture in the children's bedrooms, furniture and pictures in the dining room of decedent's apartment and furniture in decedent's bedroom in his apartment.

It is true that the decedent moved about but he provided his daughters with rooms in his various homes. I think he intended they should continue in possession of the furnishings in those rooms, the furniture in the dining room and in his own bedroom. He specifically so directed in the 2d clause of the will. I am of the opinion that the furniture and the furnishings in this question referred to should be awarded to the daughters, Marian and Janet Snowden.

The *third* question: To whom should delivery be made of the articles given to the infant children in the 2d and 3d clauses in the will, also to whom and how should the income to the children be paid from the trust created in the 8th clause of the will?

This is a knotty question. I hesitate to declare invalid the appointment of the Bankers Trust Company as guardian of the estates of decedent's children. The decedent had the right to make any lawful disposition of his own property. Section 81 of the Domestic Relations Law undoubtedly prohibits a deceased spouse from depriving the surviving spouse of right to guardianship of property other than that bequeathed by the deceased spouse. I do not understand that the Bankers Trust Company makes any claim to custody or management of any property of the infants other than that bequeathed to them by the will of the decedent. I think the appointment of the Bankers Trust Company as guardian of the minor children's estate is valid. On the other hand, these children have a surviving mother who is the lawfully appointed guardian of their persons. They should have the care, advice, counsel and training of a mother. To bring them up properly, train and educate of course involves the expenditure of money. Other things being equal, who better can do it than a mother? Until and unless a lack of discretion is shown in the mother I think the articles bequeathed to the infants and the income of the children from the trust should be delivered and paid to the mother and general guardian during minority. There should be harmonious

co-operation between the guardian of the estate and the guardian of the persons of the infants. A spirit of mutual helpfulness should exist. Should there be a lack of exercise of sound discretion and good sense by the respective guardians of the persons and estates of the infants, an application might well be made to the court to remedy same. I feel that this should not and will not be necessary.

The *fourth* question: Whether the legacy of $100,000 for the benefit of Anna Katharine Bolton Chalaire, created in the 7th clause of the will, be paid out of the residuary estate before the distribution to Beulah M. Snowden of her one-third interest bequeathed under clause 6 of the will?

It seems to me that the principal reason advanced by the widow for a contrary disposition thereof is that this legacy is given by clause 7 while she gets her one-third interest under the provision of clause 6. I do not think her contention is sound. A residuary clause in the will does not cease to be such because it does not happen to be at the end of the instrument. The question is, what was the intention of the testator? All provisions of the will must be read together to ascertain such contention. A subsequent bequest is not invalidated by a previous residuary clause. (*Morton* v. *Woodbury*, 153 N. Y. 243.)

I conclude that this legacy of $100,000 should be deducted before the division of the residue between the widow and children.

The *fifth* question: Whether Beulah M. Snowden (Mrs. Snowden No. 2) is entitled to dower in the Southampton real property?

The only real property left by decedent is a residence at Southampton, large and not subject to a physical division in the thirds. In a prior construction in this estate upon other questions this court held: " Except for special legacies, the testator gave to his wife one-third of his estate and two-thirds to his children. That would seem to be a fair disposition." (*Matter of Snowden*, 137 Misc. 56, 58.)

It is unquestionably the rule that if the provisions of a will are not compatible with a claim of dower or where the general scheme of the will indicates that the provisions in favor of the widow were intended by the testator to constitute her full interest in the estate, then no dower attaches. (*Matter of Gorden*, 172 N. Y. 25, 34.)

The power of sale under clause 11 of the will is to both the executor and trustee. While it may be a naked power of sale to the executor to be used only in case the personal property is insufficient for payment of debts, taxes and expenses of settlement " during the administration of my estate," the power to the trustee " thereafter " may be called an active power and one which as trustee must be exercised in the line of repairs, rent, payment of taxes and general

supervision. While the word " rent " is not mentioned in the power, it would be a duty of the trustee to collect rent, nevertheless, until a favorable price could be obtained. It is wholly unlikely that the power to the executor would ever be exercised, as in an estate of this size it is a fair assumption that the personalty will be sufficient to pay all debts and administration expenses. The executor's duty, which the law gives it a year and as much longer as the necessities of the case require to perform, will be ended when it has paid the prior legacies, debts, taxes and expenses and turned over the balance of the estate to the trustee, and this trust will necessarily include two-thirds of the real property.

The testator must have known that this Southampton show place was not divisible by three, that two-thirds of it would pass to the trust and that at some time it would have to be sold to make the division. Such division would necessarily have to be of such proceeds, one-third to the widow outright and two-thirds in trust.

Under present intestacy law, Mrs. Snowden No. 2 would receive one-third of the real property in fee and no more. Dower under the prior law is limited to the use of one-third or three-ninths of the realty. At bar she has the use of three-ninths by direct devise. Claiming in addition the use of one-third of the remaining two-thirds, or two-ninths, would give her the use of five-ninths.

No election exists. Election exists where deceased gives something in lieu of dower which the widow rejects in order to get more by electing dower. An illustration is this — Deceased bequeathes his widow $1,000 in lieu of dower, leaving realty worth $3,000,000. The widow's dower is the life use of $100,000, which is greater than the $1,000 legacy, so she elects to take her dower. The reason is there is no direct devise or devise in fee to the widow. At bar the devise of one-third of all realty is one-third in fee and passes *title* to the widow in the land itself, far greater than the use of one-third to which her dower would be limited.

In my opinion Beulah M. Snowden aforesaid has no dower in the Southampton real property.

The *sixth* question: How is the $5,000 given Mrs. Chalaire yearly under the 7th clause of the will to be disposed of pending settlement of the estate?

This question too has its difficulties. It is a practical question and is not solved unless it is solved in a practical way. The purpose of this gift was to insure to Mrs. Chalaire an income to her for the time between the death of the decedent and the time when her income would accrue on the $100,000 trust created for her under the 7th clause of the will. In this relation the decedent may well have thought that settlement of the estate might be long delayed

and the set up of the trust likewise. This estate, in fact any estate, is subject to contingencies, debts, failures, lawsuits, losses, etc. To pay this $5,000 annually before creditors and taxes are paid, might subject the executor to a surcharge. It is but a legacy and subject to prior claims against the estate. Why not treat it as a debt measured at the rate of $5,000 per annum from the date of the death of Mr. Snowden to such time as the estate has cleared itself of prior obligations and payable at the rate of $5,000 per annum from the date of death to the time the trust is set up? This will finally give to her the full amount which is due her under this provision and as speedily as the condition of the estate will permit. This suggestion to treat this as a debt is made by the special guardian. It is unique but it is practical and operative and solves the question.

Submit order accordingly.