Hugh V. N. Bodine, S.
May 7,1951, Isabella M. Sheldon died leaving a will dated July 7, 1948 and an inter vivos trust agreement dated June 8, 1948, the provisions of which as related to this proceeding must be considered together for thereon construction of the will depends. She was around 77 years old in 1948. The will was admitted to probate without objection.
By clause Fourth of her will she left her residuary estate to her two children, Ralph C. Sheldon, Jr., the objectant, and Julia Sheldon Ludwig, both of whom are married and childless and in their fifties. The residuum after payment of the taxes assessable against the estate would amount roughly to some $375,000.
Clause Fifth of the will, however, as events proved and as must have been in the mind of decedent as herein later developed, in effect nullified the residuary provision in its entirety.
“ Fifth. The payment of all estate, inheritance, transfer or death taxes which may be assessed by reason of my death shall be paid from and charged upon the residuary portion of my estate, whether or not the property assessed passes under my will.”
*121 The related clause of the trust agreement is as follows: “ 2. Upon the death of the Donor, if her net estate, after the distribution of specific legacies and the payment of general legacies therein mentioned, is not sufficient for the payment of estate, succession, death or inheritance taxes, the deficit created after applying the residue of such estate to the payment thereof shall be paid proportionately from the trust herein designated as Trust Number One and the trust designated as Trust Number Two.”
Trust No. 1, referred to in the trust agreement, is for the life benefit of Ralph 0. Sheldon, Jr., the objectant, having a gross value of $1,389,266.20 and trust No. 2 is for the life benefit of Mrs. Ludwig, having a gross value of $539,331.78. Benefits to the two children terminate at their death, the survivor in the meantime to receive the income from both trusts. Upon the death of both the income is payable in perpetuity to a charitable foundation.
The two instruments reflect great care in their preparation. It is apparent that the scriveners and Mrs. Sheldon must be considered as then well aware of the tax problem both as to an approximation of the amount affecting the testamentary estate and the trust estate and the fact that the residuary testamentary estate would prove materially insufficient to pay the transfer taxes assessable on the aggregate property involved. Determination, therefore, of the source of payment was squarely in the hands of decedent. If no illegality is involved and the intent is clear her wishes as expressed are to be carried out. No testimony or evidence aside from the records has been taken.
Objectant contends that the direction to pay all estate taxes from the residuary estate, including those assessable against the property transferred under the trust agreement, is repugnant to the residuary testamentary gift. It is unreasonable to believe, he argues, that in one breath, so to speak, decedent-testatrix would make an absolute gift and in the next nullify it completely. Such a conclusion, he avers, “ contorts reason ” and “ mocks the laws of nature as well as the laws of man ”. It is more reasonable to assume, according to objectant, that his mother intended by the residuary gift to protect her children’s families in ease of their consorts’ early deaths than to assume she understandingly limited them to the annual income from the trust, substantial though it would be, and thus subject them to the chance of being able to accumulate sufficient therefrom to provide capital for support of dependents following cessation of trust income.
*122 This argument, forcible as it is in the abstract, is not buttressed by any showing of the present financial status of the children. For aught that appears they may have already been well provided for when the instruments were made. At least it is as reasonable to assume that as to infer any intent on the mother’s part to cast her childrens’ families adrift in the contingency assumed.
Arguments aside, this will, as all others, must be construed in line with the maker’s intent as gathered therefrom. We are not at liberty to depart from expressed intent and thereby in effect and in fact rewrite this will, a cardinal principle in testamentary construction. (Matter of Hopner, 148 Misc. 748; Matter of Barrett, 141 Misc. 637, and cases cited therein.) There is nothing present in the record before us from which to derive any sidelights on the reasons underlying decedent’s plan of disposition. Speculation and inference have no standing in interpretation where the meaning and intent does not appear open to question.
The will itself being without ambiguity, any repugnancy in its terms must yield to the overall expressed intent. The intent as gathered from its terms and from expressions in the subsequent trust agreement are crystal clear. Regardless of any personal motive or reason she may have had, she provided unmistakably that her residuary estate was subject to payment of all estate taxes assessable from whatever source. The fact that the residuary gift was cut off by a later expressed provision is of no consequence in view of the clear intent gained when both clauses are considered together. (Matter of Leibson, 91 N. Y. S. 2d 628; Matter of Snowden, 140 Misc. 870.) It follows that the objection related to this phase of the proceeding should be dismissed.
There remains to be considered the claim that the foregoing construction constitutes a gift to charity in excess of the proportion permitted by statute and is therefore an evasion of section 17 of the Decedent Estate Law. The basis for this argument is that by directing all of the residue to be used for taxes, if necessary, and as it so turned out to be, the trust estate profited to the extent of some $300,000.
Objectant’s position is that the direction in the will channeling the residuum which would otherwise pass to the children by clause Fourth into the trust by way of payment of taxes constitutes, in its practical aspects, as surely a gift to charity as though decedent had actually made a charity the recipient of her residuary estate. That Mrs. Sheldon could legally have included all of her property in the inter vivos trust is conceded. *123 Not having done so, however, the law applies to the disposable property remaining on her death and the question is, whether the direction to pay taxes therefrom otherwise payable from the trust estate, the ultimate beneficiary of which is charity, is condemned by the statute.
Independently of the charity proposition decedent did have the unquestioned right to direct from what fund the taxes should be paid although normally they would be apportioned among those persons interested in the gross estate. (Decedent Estate Law, § 124.)
The situation would naturally be entirely different had there been no benefits reserved to the children in the trust property. In such case the statute (Decedent Estate Law, § 17) would apply without question. However there are very substantial benefits here reserved, the total net income of the trust.
Are we at liberty to weigh the benefits accruing to the children through the medium of both instruments or must the decision depend on the testament alone? The statute does not answer the query. It cites no exceptions. The right of an included person to invoke the prohibition is as available to the millionaire as to the pauper. The fact that a testator may have settled upon the relative concerned the bulk of his property before death is not dealt with and most surely the plan adopted by Mrs. Sheldon is not made an exception in terms.
The answer advanced to this line of reasoning is that the taxes levied against the estate which for tax purposes includes the trust fund as well, are levied against the value of the life estates of the children only and not against the interest the charity has therein, the latter being exempt. It follows, too, that had no rights in the trust estate been granted the children, there would have been no tax assessable against the trust. In other words, by directing payment of taxes from the residuary estate the charity did not benefit. On the contrary the life estates in the trust did benefit at the expense of the residuary estate.
It further appears from the computations furnished by the accounting executors-trustees and not questioned by objectant, that had decedent not made the trust but had included all her property in her estate and disposed of it under the plan set forth in the trust, there would have been no contravention of the statute for the reason that the present value of the life estates as computed would have exceeded the value of the property passing to the charity.
No cases have been cited and I have found none distinctly applicable to the facts here present and bearing on the propriety *124 of considering both instruments in weighing the benefits conferred on the children. It would appear illogical to hold that such consideration cannot be given. Both were stated and interlocking parts of the plan of distribution and should be construed accordingly. It appearing that objectant is receiving fully as much as he would be entitled to had a life estate in the residue been set up in the will he is in no position legally to complain of the plan adopted. To hold otherwise would be sacrificing substance for form. It follows that this ground for objection should also be dismissed.
Objections dismissed — decree accordingly.