In the Matter of the Estate of HAROLD FRANK, Deceased. William Frank, Appellant; University of Rochester et al., Respondents.

Fourth Department, May 28, 1976

*Bernstein, White & Bernstein (David White* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (George Hamlin* of counsel), for University of Rochester and others, respondents.

*Harris, Beach & Wilcox (Edward Macomber* of counsel), for Ruth G. Frank and another, respondents.

*Louis J. Lefkowitz, Attorney-General (Peter Borrok* and

*Samuel A. Hirshowitz* of counsel), for ultimate charitable beneficiaries, respondents.

GOLDMAN, J.   In this will construction proceeding, petitioner-appellant William Frank seeks to set aside certain charitable dispositions made by a will and trust instrument executed by his father, Harold Frank. Petitioner's theory is that the two instruments constitute a single testamentary disposition which violates the limitation on charitable bequests contained in EPTL 5-3.3. The Surrogate dismissed the petition.

The petition alleges that on September 27, 1966 Harold Frank executed a will in which he devised the residue of his estate to a revocable trust (hereinafter "the primary trust") which was created by a written instrument bearing the same date. At about the same time he delivered substantially all of his assets to the trustee, Lincoln Rochester Trust Company (now Lincoln First Bank of Rochester). The trust instrument provided that upon Harold's death the trustee would make several minor outright gifts and then create out of the remainder of the corpus two trusts, denominated "A" and "B", both of which would provide all income to Harold's wife, Ruth G. Frank, for life. Upon her death the principal and income of trust "A" were to be disposed of by a general power of appointment through a specific bequest in her will. In default of such a bequest, the principal and income of trust "A" were to be added to trust "B". The corpus of trust "B", upon Ruth's death, was to be distributed among seven charitable organizations named in the petition. The 1966 will was revoked on November 27, 1972 by a new will which provided for essentially the same dispositions. At the same time the trust instrument was amended so as to qualify trust "B" as a charitable remainder unitrust under the Federal Internal Revenue Code. Harold Frank died on October 25, 1974, and the 1972 will was admitted to probate.

The petition further alleges, upon information and belief, that when the trust instrument was executed Harold and Ruth entered into a secret contract, express or implied, by which she agreed either to appoint the corpus of trust "A" to trust "B" or else fail to exercise her power of appointment so that the same result would occur automatically. Thus, the petition averred, Ruth never intended to exercise her power of appointment independently but acted as the testator's agent, or "alter ego", for the sole purpose of circumventing EPTL 5-

3.3. The petition further alleges that the trust was testamentary in character because Harold expressly reserved the right to amend or revoke it, thereby retaining control of the trust assets during his life. Accordingly, petitioner sought to have the will and trust instrument decreed to be a single testamentary disposition and prayed that the disposition be set aside to the extent that it contravened the EPTL 5-3.3 limitation on charitable bequests.

Defendants moved to dismiss the petition for failure to state a cause of action. The documents submitted in support of the motions revealed that Harold Frank did, as alleged in the petition, retain a large measure of control over the trust assets. The primary trust agreement, as amended, reserved to him the right to revoke or modify the instrument and to withdraw any or all of the principal. The amended trust agreement also made clear that Harold intended trust "A" to qualify for the Federal estate tax marital deduction. All provisions of the agreement were expressly made subordinate to that intent and purpose. Harold's last will, also annexed to the defendants' motion papers, sought to devise all of his real property and all of his tangible personal property, except cash and securities, to his wife Ruth. The residue of the estate was devised to Lincoln First Bank, as trustee under the primary trust agreement, to be administered and distributed pursuant to the terms of that agreement.

EPTL 5-3.3, which appellant seeks to invoke, provides that a "testamentary disposition" to a charity, if contested by the testator's surviving issue, "shall be valid only to the extent of one-half of such testator's estate * * * after the payment of debts". We conclude, as did the Surrogate, that the trust agreement created a valid *inter vivos* trust and not a testamentary disposition. Examination of the agreement reveals that the essential elements of a valid trust are present: the trustee and beneficiaries are designated, an identifiable corpus is specified, and legal title to the corpus is transferred to the designated trustee (see, generally, *Brown v Spohr,* 180 NY 201, 209). Nor is this trust rendered invalid, or "illusory" (cf *Newman v Dore,* 275 NY 371, 379), by the fact that the settlor reserved powers of revocation *(Schenectady Trust Co. v Emmons,* 261 App Div 154, 157, affd 286 NY 626; see, also *Von Hesse v MacKaye,* 136 NY 114, 119) and of modification *(Robb v Washington & Jefferson Coll.,* 185 NY 485, 493).

Furthermore, even if it is true, as petitioner alleges, that

the settlor's motive in creating the primary trust was to avoid the impact of EPTL 5-3.3, that motive does not impair the validity of the trust. By statute, a trust may be created for any lawful purpose (EPTL 7-1.4), and by settled case law the purpose to circumvent such a statutory restriction is lawful *(City Bank Farmers Trust Co. v Charity Organization Soc.,* 238 App Div 720, 722-723, affd 264 NY 441; cf *Newman v Dore,* p 377, *supra).*

The trust does not lose its *inter vivos* character and become "testamentary" merely because it provides for the creation of two new trusts upon the settlor's death. The beneficiaries' rights under the trust accrued, as a matter of law, at the time of the execution of the agreement and the transfer of legal ownership of the corpus to the trustee, even though the settlor reserved powers of revocation and modification. This is in contrast to a will, under which beneficiaries' interests do not accrue until the death of the testator *(Robb v Washington & Jefferson Col., supra,* pp 492-493).

Appellant, relying on *Amherst Coll. v Ritch* (151 NY 282), next seeks to invoke EPTL 5-3.3 on the theory that a "secret trust" arose by virtue of Ruth's alleged contract to exercise her power of appointment in favor of trust "B". The argument, briefly stated, is that equity requires that Ruth perform the contract because it induced the settlor to create the primary trust, but that the exercise of her power of appointment in accord with the contract would transgress the limitation of EPTL 5-3.3. Hence, appellant concludes, the trust must be set aside.

A critical difference between *Ritch* and the present case is that *Ritch* involved gifts *by will* induced by legatees' promises to the testator that they would devote the legacies to certain charitable purposes (151 NY, at p 323). But here, as we have concluded, the trust instrument effected a valid *inter vivos* disposition, rather than any "testamentary disposition" to which EPTL 5-3.3 could apply. Significantly, it was expressly recognized in *Ritch* that chapter 360 of the Laws of 1860 (a predecessor of EPTL 5-3.3) applied only to testamentary dispositions and did not in any way restrict *inter vivos* dispositions to charity (151 NY, at p 334). Indeed, our settlor would not have transgressed EPTL 5-3.3 even if he had provided in the trust agreement that upon his death the entire corpus of the primary trust would pass in fee to the charitable beneficiaries (see, *Robb v Washington & Jefferson Coll., supra,* p 495; *City*

*Bank Farmers Trust Co. v Charity Organization Soc.,* 238 App Div 720, *supra).*

Moreover, assuming that Ruth did contract to exercise her power of appointment in favor of trust "B", that contract—unlike a promise to apply a legacy to a particular purpose—is unenforceable by virtue of EPTL 10-5.3 (cf *Matter of Brown,* 33 NY2d 211). Thus, so far as the dispositions to charities under the *inter vivos* trust are concerned, EPTL 5-3.3 is not applicable either by its terms or by any "secret trust" theory.

It remains to consider whether the dispositions under Harold's will violate EPTL 5-3.3, for it is clear that a testamentary gift to an *inter vivos* charitable trust can come within that statute's prohibition (see *Decker v Vreeland,* 220 NY 326, 334-335; cf *Matter of Sheldon,* 4 Misc 2d 119, 122-123). However, even if the residue of Harold's estate at death, which was bequeathed to the primary trust, exceeded "one-half of such testator's estate * * * after the payment of debts" (EPTL 5-3.3)—a fact nowhere alleged in the petition, still it would not follow that the statutory limitation was transgressed.

By the terms of the primary trust agreement, any assets bequeathed to that trust and not used to fund the outright gifts were to be divided between trusts "A" and "B". In order to hold that the assets that passed to trust "A" were bequeathed to charities so as to come within the scope of EPTL 5-3.3, we would have to conclude that Ruth was obliged, under a *Ritch*-type "secret trust", to appoint those assets to trust "B". However, examination of the trust agreement, which is properly to be considered on this issue (CPLR 3211, subd [c]), compels the conclusion that there was no such "secret trust".

First, the agreement makes abundantly clear that the settlor intended that trust "A" be so constituted as to qualify for the Federal estate tax marital deduction. Under Federal law, which determines what interests may qualify for that deduction *(United States v First Nat. Trust & Sav. Bank,* 335 F2d 107, 112), a trust such as trust "A" may qualify only if the surviving spouse's power of appointment "is exercisable by such spouse alone and in all events" (US Code, tit 26, § 2056, subd [b], par [5]). She "must have power to appoint the entire interest or the specific portion to either herself or her estate" (26 CFR 20.2056[b]-5 [a] [3]), and she must be able to exercise the power in favor of "whomsoever she pleases" (26 CFR 20.2056[b]-5 [g] [2]). Thus, any secret duty on Ruth's part to

appoint in favor of trust "B" would be repugnant to the stringent qualifications for the marital deduction.

Secondly, the exceedingly liberal provisions governing the administration of trust "A" make it plain that the settlor's overriding purpose in creating that trust was to support his widow "in substantially the style and manner to which she was accustomed" rather than to benefit the charities. She is authorized to withdraw any or all of the principal, and the trustee is directed to exercise his discretion "liberally in favor of [the settlor's] wife, even to the full extent of the trust principal if the trustee shall deem it advisable". Such provisions are hardly consistent even with a duty to conserve the corpus, much less appoint it to charity.

Finally, if the bequest to the primary trust were to violate EPTL 5-3.3, it could only be because the value of the accretion to the corpus of trust "B" under the will was so great as to exceed the combined values of (1) the accretion to the corpus of trust "A" and (2) the real and personal property which passed outright to the testator's wife under the will. The petition does not suggest this unlikely possibility and the question was not raised in the Surrogate proceedings. By the terms of the trust agreement, the distribution of testamentary assets as between trusts "A" and "B" must await "the final determinations in the federal estate tax proceedings". Hence, in the present posture of the case the Surrogate properly dismissed the petition and the decree should be affirmed.

MARSH, P. J., MOULE, SIMONS and DILLON, JJ., concur.

Decree unanimously affirmed, with costs to all parties filing briefs, payable out of the estate.