528 So.2d 422 (1988)
In re ESTATE OF David A. KATZ, Deceased.
Leticia KENT and Mignon Madden, Appellants,
v.
Stanley M. KATZ, As Personal Representative and As Trustee under Declaration of Trust Dated November 19, 1979, As Amended, Appellee.
No. 87-0131.
District Court of Appeal of Florida, Fourth District.
June 15, 1988.
Larry Klein of Klein & Beranek, P.A., and James E. Weber of James E. Weber, P.A., West Palm Beach, for appellants.
James G. Pressley, Jr., and Robert Rio of Gunster, Yoakley, Criser & Stewart, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Lineal descendants of decedent David A. Katz  his two daughters  appeal an order granting partial summary judgment to the personal representative on the issue of the *423 applicability of Florida's mortmain statute, by which appellants wished to avoid decedent's gifts to charities. We affirm.
Decedent executed two documents  his will and a revocable living trust  on November 19, 1979. Codicils to the will and amendments to the trust executed in 1982 and 1984 are not relevant to this appeal. The will as originally written provided for distribution of tangible personal property to decedent's wife or, if she predeceased him, to his daughters; and the pour-over of the net residue of the estate to the inter vivos trust, to be added to its existing property. Under the 1979 will and trust, and amendments through 1984, the appellants, decedent's only children, Leticia Kent and Mignon Madden, were the principal beneficiaries, with outright gifts of $50,000 each, and lifetime income from the trust. On the death of Leticia, who is unmarried and has no children, any undistributed income and principal from her share was to be distributed to Mignon, and, if Mignon was not then living, to decedent's living issue per stirpes. Mignon has two adult children. Ultimately the income and principal of the trust would all end up in the hands of the descendants.
On March 12, 1986, 26 days before his death at age 82, decedent executed another codicil to his 1979 will, which made a change regarding the personal representative, and also executed a major amendment to his trust. The daughters were still to receive $50,000 outright and lifetime income. However, the remainder interests which under prior provisions were to go to daughter Mignon and ultimately to decedent's other descendants were now to go to the following charities: Jewish Federation of Palm Beach County, Inc., The Jewish Community Day School of Palm Beach County, Inc., Joseph L. Morse Geriatric Center of the Jewish Home for the Aged of Palm Beach County, Inc., and Temple Emanuel of Palm Beach Incorporated.
The testator died on April 7, 1986, and his daughters timely filed written notice to void the charitable bequests under section 732.803, Florida Statutes, which is known as the mortmain statute. There are substantial assets both in the estate and in the trust. Both the daughters and the personal representative filed motions for summary judgment, agreeing there were no issues of fact, and the lower court entered "an order granting partial summary judgment" to the personal representative, and holding that the mortmain statute did not apply to either the assets that are part of the estate or assets already in the inter vivos trust.
The key issue is whether the trial court erred in finding the mortmain statute inapplicable to a charitable disposition made through an inter vivos trust referred to in a pour-over will. We conclude it did not.
Section 732.803, Florida Statutes (1985), makes it possible for a spouse or lineal descendants who otherwise would be entitled to an interest in the charitable bequest, and who comply procedurally in a timely manner, to avoid charitable bequests of their decedent that were made by will less than six months before the decedent's death and were not substantially the same in the next preceding will or wills of the decedent. The statutory language that is critical here is that appearing near the beginning of the statute which makes the statute applicable under the stated circumstances if the testator's "will devises part or all of the testator's estate" (emphasis added) to a charitable institution or purpose, and which states such devise shall be avoided. Appellees, of course, urge that a trust is not a will, a change in a trust provision is not a change of a will provision, a grantor or settlor is not a testator, and dispositive provisions of a trust are not devises. Appellants urge that there is no reason to construe the statute narrowly, as mortmain statutes are not in derogation of the common law; and that inasmuch as this is a pour-over will that relies on the trust for the disposition of the greater part of decedent's property, decedent's change in the terms of the trust twenty-six days before his death is effectively a change in the will. Appellants contend the ruling of the trial court that the mortmain statute is inapplicable here creates an unwarranted escape hatch from the policy and intent of the legislature reflected in the mortmain statute.
*424 A minor support for their argument raised by the appellants was that a provision of a trust was deemed a testamentary disposition in the case of In Re Estate of Potter, 469 So.2d 957 (Fla. 4th DCA 1985). Appellees point out, however, that the mortmain statute was not involved in Potter; rather, there a will and trust were read together to determine testamentary intent in respect to the operation of the abatement statute. Appellees see no basis for analogy here.
There is no Florida case law directly on point; and appellants rely on the policy reasoning found in the Florida case of Taylor v. Payne, 154 Fla. 359, 17 So.2d 615 (1944), as support for their position. There the Court said that the purpose of the mortmain statute was to protect spouse and children from improvident gifts made under apprehension of death to the neglect of the natural objects of the testator's bounty. The Court also reasoned that, because there is neither an inherent nor a Constitutional right to devise or inherit property by will, and because the intent of the statute is not to restrict the right of the charitable beneficiaries to take or hold property, but merely in the limited circumstances of the statute to limit the way in which the testator may dispose of his property, our mortmain statute cannot be unconstitutional. The Court also said  and appellees feel this is more helpful to them than to appellants  that the statute should be so construed as only to secure full protection to those intended to be shielded by its provisions, while the cardinal rule of will construction  to abide by the intention of the testator unless it is violative of some positive or settled rule of law  is at the same time given as much effect as possible. Id. at 618. Appellees point out that Payne does not in any way deal with whether the mortmain statute should be applied to the terms of inter vivos trusts.
The heart of appellants' argument is that the intention of the legislature was not to limit the mortmain statute's application to devises right in the will and thus leave an escape by means of other devices used for the descent of property. Appellants cite case law stating as principle that a mere literal construction of a part of a statute ought not to prevail if it is contrary to statutorily apparent legislative intent and if the words are flexible enough to permit some other construction. Ozark Corporation v. Pattishall, 135 Fla. 610, 185 So. 333 (1938). Another case says a statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. Barrington v. State, 145 Fla. 61, 199 So. 320 (1940). Appellants then analogize to a 1922 case expanding to include automobiles the application of a statute authorizing municipal regulation of other specified land vehicles. Appellants quote 4 Scott on Trusts section 362.6 to the effect that it may be contended that a mortmain statute limiting the fractional part of an estate that may go to charities applies to dispositions by inter vivos trust where the settlor retained a power of revocation. Appellants would extend the same idea to the terms of our mortmain statute.
In a sentence, we are presented with the age-old conflict between the principle that a statute may be construed according to the legislative purpose or intention, and the plain meaning rule. John Marshall once said that while construction is necessary when clauses of an instrument are contradictory, where a provision has a plain meaning and is not in conflict with another provision of the same instrument, the courts should not disregard the plain meaning, unless applying it would be monstrously absurd and unjust, such that everybody would unhesitatingly reject that application. Sturges v. Crowninshield, 4 Wheat. 122, 202, 17 U.S. 122, 202, 4 L.Ed. 529, 550 (1819).
In In Re Blankenship's Estate, 122 So.2d 466 (Fla. 1960), the Florida Supreme Court stated that the mortmain statute is not to be construed either strictly or narrowly, but its plain language is to be followed. Although the statute has been amended since that time  in part to change the plain language meaning that was central to Blankenship  the statute continues to state its meaning very clearly, if in complex *425 language, and does not need construction.
Responding, nevertheless, to some of the construction reasoning of appellants, appellees attack appellants' analogy to the vehicle regulation case, pointing out that whereas automobiles are members of the class of vehicles intended to be regulated but were a new development, (and, we might add, involving ejusdem generis as a rule of construction), trusts have been around for a long time, (and it is doubtful that "trust" is of the same kind as "will").
Appellants respond that revocable inter vivos trusts as means of disposing of property upon one's death were considered invalid because illusory, until what is now section 689.075, Florida Statutes, was enacted in 1969. (They have given no response to the matter stated above in parentheses, since appellees did not state that argument.) Appellants may not have done themselves a service by calling that statute to our attention.
Section 689.075 says in part the following:
(1) A trust which is otherwise valid, including, but not limited to, a trust the principal of which is composed of real property, intangible personal property, tangible personal property, the possible expectancy of receiving as a named beneficiary death benefits as described in s. 733.808, or any combination thereof, and which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any one or more of the following reasons:
(a) Because the settlor or another person or both possess the power to revoke, amend, alter, or modify the trust in whole or in part;
(b) Because the settlor or another person or both possess the power to appoint by deed or will the persons and organizations to whom the income shall be paid or the principal distributed;
(c) Because the settlor or another person or both possess the power to add to, or withdraw from, the trust all or any part of the principal or income at one time or at different times;
(d) Because the settlor or another person or both possess the power to remove the trustee or trustees and appoint a successor trustee or trustees;
(e) Because the settlor or another person or both possess the power to control the trustee or trustees in the administration of the trust;
(f) Because the settlor has retained the right to receive all or part of the income of the trust during his life or for any part thereof;
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.
... .
(3) The fact that any one or more of the powers specified in subsection (1) are in fact exercised once, or more than once, shall not affect the validity of the trust or its nontestamentary character.
... .
(5) The amendment of this section, by chapter 75-74, Laws of Florida, is intended to clarify the legislative intent of this section at the time of its original enactment that it apply to all otherwise valid trusts which are created by written instrument and which are not expressly excluded by the terms of this section and that no such trust shall be declared invalid for any of the reasons stated in subsections (1) and (3) regardless of whether the trust involves or relates to an interest in real property.
Although this statute makes no direct reference to the mortmain statute and its impact vel non on a revocable inter vivos trust, reading subsections (1) and (3) together tells us that what happened in the instant case cannot under this statute be the basis for deciding that the inter vivos trust is an attempted testamentary disposition. The fact that the settlor one or more *426 times exercised his powers to add to the corpus of the trust and to modify or alter the trust does not affect its nontestamentary character. If the trust is nontestamentary, how can the mortmain statute apply to the change made in the trust by amendment of March 12, 1986?
Appellees do not raise this particular argument. They do analogize to a case involving use of a joint savings account with right of survivorship as a means of avoiding a spouse's elective share on that part of decedent's property  Estate of Solnik, 401 So.2d 896 (Fla. 4th DCA 1981). There this court held that the statutory language pertinent to that case was clear and unambiguous and therefore should not be construed to subject the jointly held property to administration within the probate code and the elective share provision of the code. A similar result was reached respecting property conveyed by the decedent by deed in Kelley v. Hill, 481 So.2d 1311 (Fla. 2d DCA 1986), which adopted the Solnik analysis. In determining that the deeded home was not subject to administration the court refused to see any legislative intention to prohibit otherwise valid conveyances intended to reduce what is subject to administration.
Such reasoning could also be applied in the instant circumstances. When the legislature adopted the statute, discussed above, which protects revocable inter vivos trusts from a range of attacks, it could easily have stated that the mortmain statute or something parallel to it can be the basis for a legitimate attack, had it so intended. Instead, it said that exercise of certain specified powers  within which the charitable gift that is parallel to creating a brand new devise to a charity shortly before death falls  will not make the trust into a testamentary disposition. Like the Kelley court, this court could hold here that to construe the mortmain statute to extend to an inter vivos trust would confuse estate planning in much the way that court feared would result from making a deeded home subject to administration and the elective share.
We think section 689.075 makes inter vivos trusts a legitimate way of reducing the assets that are subject to administration, just as a proper deed to real property is, and it is not the legislature's intent, at least since 1969, to prevent property owners from making eleventh hour provisions for transfer of property to charities after death, while avoiding probate. The inter vivos trust loophole as to property subject to administration, created by legislative enactment, is vastly larger than the one permitting evasion of the mortmain statute, which appellants view with alarm; and a legislature which enacted the former need not be supposed to find the latter abhorrent. Moreover, if the plain meaning rule should govern, there is no ambiguity, justifying construction of the mortmain statute language, to begin with.
Appellees also cite the New York case of Will of Frank, 52 App.Div.2d 335, 383 N.Y.S.2d 777 (1976), wherein a mortmain limit on the size of a testamentary disposition to charities was held to be inapplicable to the terms of a trust, created on the same day as the will, to which the will transferred the residue of the testator's estate. Even if avoiding the impact of the mortmain statute was the decedent's purpose in creating the inter vivos trust, said the court, the trust agreement did not thereby become testamentary in character. The analogy is not unreasonable.
Whereas appellants mention one inconclusive Scott comment tending to support their view, appellees cite statements of several commentators supporting theirs. Thus Grimsley and Lowell, Florida Law of Trusts (3d ed. 1984) describes the mortmain statute as narrow in light of the impact of Kelley; Bogert, Trusts and Trustees (2d ed. 1981) states categorically that a charitable gift under a revocable living trust will defeat the mortmain statute; and Scott on Trusts (3d ed. 1967) says it has been held mortmain statutes do not apply to gifts to charities through an inter vivos trust because such a disposition is not sufficiently testamentary to make such a statute applicable.
*427 The Maine Supreme Court in Canal National Bank v. Chapman, 157 Me. 309, 171 A.2d 919, 12 A.L.R.3d 50 (1961), quoted with approval a large segment from the second edition of Scott on Trusts at section 54.3. The gist of the selection is that where a settlor creates a modifiable inter vivos trust, and a subsequently executed will disposes of property in accordance with that trust as modified from time to time, and the testator/settlor later modifies the trust, the property passes in accordance with the terms of the trust as modified. The inter vivos trust is viewed as a fact of independent significance affecting the terms of disposition of the will. Effectively this permits the testator to change his testamentary disposition without executing codicils to his will, but this is no different from the result of a testamentary bequest of the contents of a room or a safe-deposit box, which the testator was free to change from time to time.
The same view is taken in Second Bank-State Street Trust Company v. Pinion, 341 Mass. 366, 170 N.E.2d 350 (1960). See also G.G. Bogert & G.T. Bogert, The Law of Trusts and Trustees § 105 (1984).
In order to conclude that the mortmain statute applies, it would be necessary to construe the trust to be a testamentary disposition and a document incorporated by reference in the will. That may have been the law as to subsequent amendments to the inter vivos trust a century ago; but in some jurisdictions was not the law as to the inter vivos trust as it stood at the time of will execution, as early as the case of President of Bowdoin College v. Merritt, 75 F. 480 (N.D.Cal. 1896).
Appellants' second point amounts to this: even if the trust property already in the trust at the time of decedent's death is not subject to the mortmain statute, should not the property that passes to the trust under the pour-over provision of the will be subject to that statute? We conclude it should not. The reasoning favored in the above referenced cases and commentaries leads to the conclusion that the pour-over provision does not make the trust a testamentary trust, and that a change in the trust is therefore not a change in the will. On this basis, the change in the remainder beneficiaries mentioned in the trust, from the grandchildren and their issue to the several charities, does not constitute a change in a devise in the will. Hence the mortmain statute is inapplicable.
We know what the trustor/testator wanted to do with the remainder interest in his property. Having adopted section 689.075, Florida Statutes, the Florida Legislature cannot have had in mind that an elderly widower with only adult children could leave his goods to charities if he happened to live at least six months after changing the pertinent trust provision, but that his intent would be automatically overridden at the desire of even only one of those adult children, if the settlor happened to survive just one day less. There evidently remains before the trial court the issue of undue influence, which could overturn the recommended result for a different reason.
Appellant's third point is rendered moot by our decision.
ANSTEAD and GUNTHER, JJ., concur.