OPINION OF THE COURT
Edwin S. Shapiro, J.
Plaintiffs bring this small claims action against their carpenter/ contractor for the value of uncompleted work in the amount of $1,356.16. The defendant interposed a $2,000 counterclaim for “extras”. Plaintiffs moved to amend their claim to $2,000, which motion is hereby granted.
At a trial before the court the following facts emerged:
The parties enjoyed a cordial relationship prior to the *19 transaction in issue. Plaintiffs were familiar with the extent of defendant’s skill as a carpenter. At plaintiffs’ request, defendant recommended an architect who provided a set of plans for a two-story addition and other extensive alterations to plaintiffs’ home. At plaintiffs’ urging, defendant prepared a written agreement to perform the labor for a fixed price of $16,000. The rather quaint and ambiguous agreement provided as follows:
"I Dennis J. Williams will supply all labor constructing one two story extension and all renovation work pertaining to said BLUE PRINTS.
"Any and all work not shown on said blue prints will be discussed and agreed on in a business type manner.
"Sir of said residence will supply all materials and extra help as much as possible.
"All this for a cost of $16,000.
"(signed) Dennis J. Williams.”
As the work progressed, a major unanticipated problem was discovered when defendant had exposed a portion of the existing roof and its supporting walls in order to raise and extend the roof according to the architect’s plans which were incorporated by reference in the written agreement. The roof and its surrounding walls were badly rotted by the infestation of thousands of wood ants in a 726-square-foot area, requiring "bridging” and the construction of "headers” in order to rip out and replace the rotted lumber. Defendant’s testimony that this condition required approximately three weeks of extra time was unrebutted by the plaintiffs.
There were discussions about this unforeseen work as well as other modifications requested by plaintiffs and performed by defendant, which defendant characterized as "extras” and which plaintiffs characterized in some instances as "substitutions” for other work described on the existing plans and in other instances as "trade-offs” for additional labor that plaintiffs would furnish on their own. There was never a full meeting of the minds which resolved the outstanding issues, i.e., whether the "extras” were mere "substitutions” and if not, whether defendant would fully relinquish his claims for the extras for the additional work to be performed by the plaintiffs. Defendant had estimated the entire job to require 16 weeks and was paid $5,000 in advance and $700 per week. However, plaintiffs’ testimony is credited that the weekly *20 payments were merged into and superseded by the fixed price agreement.
. A week before the defendant’s projected last week on the job, at which time there was a substantial amount of unfinished work, the defendant indicated that he would be finishing up after the 16th week but was willing to finish the job at the rate of $750 a week thereafter. Plaintiffs disagreed, and the issues as to "substitutions” versus "extras” again surfaced without resolution. Defendant worked a 17th week for which he was not paid the additional $750 compensation he had requested. Five hundred dollars of the original $16,000 price also remained unpaid. Defendant never returned to the unfinished job and engaged a lawyer who sent the following letter to plaintiffs:
"Dear Mr. Herzog:
"Please be advised that I represent Dennis Williams in connection with services rendered by him to you.
"Mr. Williams will not be returning to the job site. Kindly have your attorney contact me immediately upon receipt of this letter.”
I conclude that the written agreement between the parties, however ambiguous, and although unsigned by plaintiffs, is an enforceable contract and is the governing document in this case.
The key question in construing the agreement is whether it was intended to cover reconstruction, not shown on the blueprints, of the walls supporting the roof work.
The rule that ambiguity in a contract should be resolved against the party who drafted it is used only as a matter of last resort after all aids to construction have been employed without a satisfactory result. (Rottkamp v Eger, 74 Misc 2d 858 [Suffolk County 1973].) The parties were unaware of the hidden condition and I find that there was no satisfactory way of investigating it until the roof alteration was under way. Although the rotted area was not shown on the blueprints as requiring removal and replacement, plaintiffs claim that in agreeing to alter the roof according to the blueprints defendant had assumed the risk of doing everything necessary, however extensive, to properly rebuild the roof without additional cost. However, defendant cites, with considerable logic, the second paragraph of the agreement:
"Any and all work not shown on said blue prints will be discussed and agreed on in a business type manner.”
*21 I conclude that the construction proffered by plaintiffs would have the inequitable result of placing the defendant at their mercy. Such a construction, if possible, should obviously be avoided by the courts. (Board of Educ. v Port Jefferson State Teachers Assn., 88 Misc 2d 27 [Suffolk County 1976].) I construe paragraph 2 of the agreement as applying to the additional work in issue for the reason that it is "not shown on said blue prints”.
Even if plaintiffs’ strict view that defendant was required to do everything necessary to rebuild the roof should prevail over the contradictory language in paragraph 2, the first note on the architect’s plans states: "Verify all dimensions and conditions of job.” The architect’s notes were effectively incorporated into and became part of the contract between the parties (see, Heller & Assocs. v Bergner, 22 AD2d 676 [1st Dept 1964]). Since the hidden condition of the job could not reasonably have been verified at the outset, I conclude that the architect’s note, under these circumstances, contemplated subsequent verification of the unanticipated job condition and a consequent modification of the agreement based on that condition.
On the above bases, each considered independently of the other, I conclude that the additional work occasioned by the hidden condition constituted a very substantial "extra” which was neither contemplated by the parties nor shown on the blueprints. Although the defendant should have resolved this substantial additional claim at the time that it first arose, there is evidence of such an attempt and its staunch resistance by the plaintiffs. I conclude that the uncomfortable truce which resulted did not amount to a waiver.
I find and conclude that the other so-called "substitutions” were also "extras”. Some were traded off for additional work to be performed by plaintiffs; others must be evaluated against the extent of the uncompleted work. Consequently, there is a residual issue of "extras” versus "uncompleted work” which was never resolved by the parties. For the court to accurately determine the net result, it would necessarily be required to consider and weigh the evidence of extensive damages proffered by each of the parties beyond the amount of $2,000. I construe UJCA 1801, which defines a "small claim” as "any cause of action for money only not in excess of two thousand dollars”, as precluding my consideration of such testimony. However, perhaps the best test of the true value of plaintiffs’ *22 claims for unfinished work and defendant’s counterclaim for "extras” was their ready willingness to pare their claims in order to comply with the jurisdictional requirements of this court after having been given the opportunity to discontinue this action and to pursue their dispute in County Court. In so doing, the parties were advised that they were waiving all claims beyond the $2,000 claim and the $2,000 counterclaim which are now before this court.
The defendant did not fully perform pursuant to the contract. However, neither did the plaintiffs by reason of their unreasonable refusal to páy for any of the "extras” pursuant to the contract. Consequently, on the facts and the law, defendant has prevailed on his counterclaim for extras to the extent of $2,000 and plaintiffs have prevailed on their claim for uncompleted work to the extent of $2,000, each as a setoff against the other. (See, 5 Carmody-Wait 2d, NY Prac § 31:2; cf, CPLR 3215 [g].) By reason of the mutual setoffs, both the claim and the counterclaim are hereby dismissed with prejudice, .thereby barring the reassertion in any court of any claims arising out of this transaction.