**ALBANY SAVINGS BANK, FSB,**
**Plaintiff–Appellant,**

v.

**Jack HALPIN and JoAnne C. Halpin,**
**Defendants–Appellees.**

**No. 905, Docket 96–7393.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1997.

Decided June 26, 1997.

Madeline H. Kibrick Kauffman, Albany, NY (Richard H. Weiner, Cooper, Erving, Savage, Nolan & Heller, LLP, Albany, NY, of counsel), for Plaintiff–Appellant.

Jack Halpin, pro se, Redding, CA (JoAnne Halpin, pro se, Redding, CA, Duncan Barr, San Francisco, CA, of counsel), for Defendants–Appellees.

Before: WALKER, PARKER and HEANEY *, Circuit Judges.

PARKER, Circuit Judge:

Plaintiff-appellant Albany Savings Bank, FSB ("the Bank" or "Albany Savings") appeals from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *Magistrate Judge*) dismissing its complaint with prejudice. The Bank had executed a release in favor of the defendants-appellees, Jack and JoAnne Halpin, in connection with a real estate deal. The Halpins thereafter claimed that the release was a general one that relieved them of two other financial obligations they owed to the Bank, and ceased payment on those financial obligations. The Bank then sued for a declaration that the release did not cover the other two obligations, and sought to admit parol evidence to that effect. The Halpins filed an answer and counterclaim. Prior to trial, the Halpins moved for dismissal with prejudice of the Bank's complaint, relying on the broad language of the release and the parol evidence rule. Agreeing with the Halpins that the Bank's parol evidence should not be admitted, the district court granted their motion and dismissed the complaint with prejudice. The Bank then moved for dismissal of the Halpins' counterclaim, and the court granted the motion. Subsequently, the plaintiffs moved the court for reconsideration, but were denied. Because we hold that the release is ambiguous and, therefore, that the Bank's parol evidence should have been considered, we vacate and remand.

## I. BACKGROUND

Appellees in this case, Jack and JoAnne Halpin, have a long-standing relationship with the appellant, Albany Savings, and its predecessor in interest, Champlain Valley Federal Savings & Loan Association. Of the many transactions between the parties, only three (all of which concern property located in Essex, New York) are relevant to this case. The first of these occurred in July

1988, when the Halpins obtained a loan from the Bank in the original principal amount of $75,000 secured by a mortgage on a parcel of real property known as the "Bailey House." The second occurred in June 1989, when the Halpins obtained another loan from the Bank, in the principal amount of $234,000, secured by a mortgage on a marina owned by the Halpins (the "marina mortgage"). The marina property consisted of two boat sheds, a gas dock, a wood shop, a machine shop, a store, and a house known as the "Cupola House." The final relevant transaction occurred on or about September 6, 1989, when the Halpins obtained a Home Equity Line of Credit Agreement ("Home Equity Credit Line") from the Bank, secured by a second mortgage on the Bailey House. The Halpins drew money from the Home Equity Credit Line, apparently for the purpose of making enhancements to the marina property.

In June 1990, the Halpins negotiated the sale of the Cupola House with a third party named Barry Hamilton. The Bank consented to release the Cupola House from the marina mortgage on the condition that the note be paid down $30,000. The Halpins paid the $30,000 and the transaction occurred.

In June 1993, the Halpins negotiated with Mr. Hamilton to purchase the remainder of the marina. Mr. Hamilton was to assume the marina loan and mortgage pursuant to the terms of the original note. The Bank approved this transaction conditional upon, *inter alia*, the marina note being paid down $50,000, and an exchange of releases. The Bank executed a release, prepared by its counsel, in favor of the Halpins on December 2, 1993. After negotiating a settlement regarding past due interest on the marina loan, the Halpins executed a substantially identical release in favor of the Bank on December 6, 1993. The closing on the marina property occurred on or about December 7, 1993.

On December 4, 1993, Jack Halpin drew down an additional $2700 on the Home Equity Credit Line, bringing the amount withdrawn to the maximum of $65,000. After the

* The Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

closing, the Halpins offered to return the $2700 to the Bank, and asserted that the release executed by the Bank on December 2 and delivered at the closing was a general release that excused payment of the remainder of the Bailey House mortgage and the Home Equity Credit Line. The Halpins refused to make any further payments on the Bailey House mortgage or the Home Equity Credit Line.

The Bank insisted that the transaction giving rise to the release involved only the marina property and had nothing whatsoever to do with the Bailey House mortgage or the Home Equity Credit Line. The balance of the latter two loans totalled $135,000 at the time of the closing and the Bank received no money in payment on them.[1] The Bank requested execution of a more clearly worded special release, but the Halpins refused.

In April 1994, the Bank sued the Halpins in the Supreme Court of the State of New York for Albany County. The Halpins removed the action to the United States District Court for the Northern District of New York based on diversity jurisdiction. The Halpins filed an answer and counterclaim that alleged that the Bank had violated the Home Owners' Loan Act (specifically 12 U.S.C. §§ 1464(q)(1) & (q)(3)) when it demanded additional security in exchange for assigning the marina mortgage to Mr. Hamilton in June 1993, and that the Bank had caused the Halpins damage when it had advised a potential buyer of the Cupola House (who had preceded Mr. Hamilton) that the purchase price was excessive and had caused the buyer to back away from the deal. The Bank replied to the counterclaim, arguing *inter alia* that the July 1993 and December 1993 releases it received from the Halpins protected it from any liability.

In April 1995, the case was referred by consent to Magistrate Judge David N. Hurd for trial. Prior to the opening of the Bank's case, counsel for the Halpins made a motion *in limine* seeking to preclude parol evidence in connection with the disputed release. The Bank intended to introduce parol evidence to show that the release was meant to apply only to the marina mortgage. Magistrate Judge Hurd granted the motion, holding that parol evidence would not be admissible as to the release. The Halpins then moved to have the case dismissed because the Bank's claim that the release was limited despite its broad language relied exclusively on the parol evidence. The court granted the Halpins' motion. The Bank then moved to have the Halpins' counterclaim dismissed on the same ground on which the Bank's claims had been dismissed: to avoid the release executed by them in favor of the Bank, the Halpins would have to rely exclusively on parol evidence, which the court had just ruled would not be admissible. The court granted this motion and dismissed the counterclaim. Subsequently, the Bank moved the court for reconsideration of its ruling, but was denied. The Bank filed this appeal.

## II. DISCUSSION

### A. *Waiver*

■ As an initial matter, the Halpins contend that the Bank's failure to argue below that parol evidence should be admitted to explain ambiguity in the release forecloses this line of attack on appeal. We do not agree that the Bank failed to raise its ambiguity argument below. At the pre-trial conference at which the district court dismissed the Bank's claims, counsel for the Bank responded to the court's stated position that the release was an unambiguous general release in the following manner:

> The issue of being clear or not is addressed specifically in the bank's release.... [I]n the last paragraph of the release the language is not the traditional language of a release. Normally a release, if you bought one, a Bloomburg release or whatever, the next to last paragraph that reads ["]they ever had,["] et cetera, the period would be at the end of the second line of that paragraph, your Honor. Then there are some additional words that are not normally in a release, which presents a

---

1. The Halpins refute this claim of a $135,000 windfall by asserting that there were "other" disputes which were also resolved in the Bank's favor at the time. This is an assertion which will have to be addressed on remand.

different situation, ["]limited however to any claim or cause of action.["] So that we are dealing with a release, at that point in the release, that is ambiguous, there isn't any question about it. This is not a clear cut release.

While the Bank's argument is no model of clarity, it does highlight specific language and claim explicitly that the language renders the release ambiguous. Moreover, it does so in the context of urging the district court to admit the parol evidence. The Bank therefore adequately raised the issue of ambiguity to the district court and thus preserved the parol evidence issue for appeal; we therefore reject the Halpins' waiver argument.

### B. *Ambiguity of the Release*

The Bank argues that it should have been allowed to introduce parol evidence relating to the December 2 release. The Halpins argue that such evidence is barred by the parol evidence rule. The district court agreed with the Halpins. It noted that the Bank had not claimed fraud, duress, illegality or mutual mistake, and that the Bank was arguing only that it should be allowed to admit parol evidence to show the scope of the release. After reviewing the case law cited by the Bank, the district court concluded that "[a] close reading of the case law thus establishes that under New York state law where there is no ambiguity and the facts do not fall within one of the categories which provide an exemption from the parol evidence rule, the intent of the parties as to the scope of the release must be derived from the language of the release itself." *Albany Sav. Bank v. Halpin*, 918 F.Supp. 553, 560 (N.D.N.Y.1996). Concluding that the release was unambiguous, the district court denied the Bank's motion for reconsideration. The Bank renews its arguments on appeal.

■ Under New York law, general releases are governed by principles of contract law, *Mangini v. McClurg*, 24 N.Y.2d 556, 562, 249 N.E.2d 386, 389, 301 N.Y.S.2d 508, 512 (1969), and "[t]he parol evidence rule forbids proof of an oral agreement that might add to or vary the terms of a written contract that was intended to embody the entire

agreement between the parties," *Stage Club Corp. v. West Realty Co.*, 212 A.D.2d 458, 459, 622 N.Y.S.2d 948, 950 (1st Dep't 1995) (citing *Fogelson v. Rackfay Constr. Corp.*, 300 N.Y. 334, 90 N.E.2d 881 (1950)). The question of whether the language of a contract is ambiguous is considered a question of law, *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir.1992); we therefore review the district court's determination of this issue *de novo*.

■ The Bank argues that the parol evidence rule does not apply here because the release is ambiguous on its face. The release provides as follows:

To all to whom the presents shall come or may Concern, Greeting: Know Ye, That ALBANY SAVINGS BANK with an address at 833 Broadway, Albany, New York, for and in consideration of the sum of One and 00/100 Dollars ($1.00), and other good and valuable consideration, lawful money of the United States of America to them in hand paid by Jack Halpin & JoAnne Halpin the receipt whereof is hereby acknowledged, has remised, released, and forever discharged, and by these presents does for their heirs, successors, and assigns, remise, release and forever discharge the said Jack Halpin & JoAnne Halpin its heirs, executors, administrators, successors and assigns, of and from all, and all manner of action and actions, cause and causes action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law or in equity, which against Jack Halpin & JoAnne Halpin they ever had, now have or in the future can, shall, or may have, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents limited, however, to any claim or cause of action.

The release may not be changed orally.

In Witness Whereof, the said Albany Savings Bank have caused this Release to be executed on this 2nd day of December, 1993.

Albany Savings Bank

/s/ Robert McCormick

By: Assistant Vice President

The Bank contends that the phrase "limited, however, to any claim or cause of action" at the end of the main paragraph of the release is unclear and renders the release ambiguous.

This phrase does indeed create ambiguities. The term "claim" is ambiguous: it may mean an existing cause of action (only), or it may include any right to payment, whether or not disputed. *See Black's Law Dictionary* 247 (6th ed.1990). It is also impossible to determine either from the language of the release or its punctuation whether the phrase highlighted by the Bank ("limited, however, to any claim or cause of action") modifies the list of obligations starting "all, and all manner of action ..." and ending "... claims and demands whatsoever" (the "List"), or whether it modifies the phrase "any matter, cause or thing whatsoever," or whether it modifies both.

Because of these ambiguities, the release can be read either to release or not to release the Halpins from obligations that were not disputed before the release. For example, if we assume (a) that the term "claim," as used above, includes an undisputed note or a line of credit; and (b) that the phrase "limited, however, to any claim or cause of action" limits only the List, we can understand the release to state the following:

Albany Savings ... release[s] ... Jack Halpin & JoAnne Halpin ... of and from [any claim (including an undisputed note or line of credit) or cause of action] which against Jack Halpin & JoAnne Halpin they ... in the future can, shall, or may have, upon or by reason of any matter, cause or thing whatsoever [existing at the time of, or prior to, this release].

As the pre-existing note and line of credit would fit within the broad phrase "any matter, cause or thing whatsoever," this interpretation would bar the present action.

2. The Halpins argue that there were existing disputes between them and the bank at the time of the closing, citing their counterclaims. None

If, on the other hand, we assume (a) that the term "claim" means essentially "cause of action" and does *not* include an undisputed note or a line of credit; and (b) that the phrase "limited, however, to any claim or cause of action" does *not* limit the List, but instead limits the phrase "any matter, cause or thing whatsoever," we can understand the release to state the following:

Albany Savings ... release[s] ... Jack Halpin & JoAnne Halpin ... of and from all, and all manner of action and actions, cause and causes action, suits, debts ... claims [*not* including an undisputed note or line of credit] ... which against Jack Halpin & JoAnne Halpin they ... now have or in the future can, shall, or may have, upon or by reason of any [claim (*not* including an undisputed note or line of credit) or cause of action] [existing at the time of, or prior to, this release].

The instant action would fit within the term "all manner of action," but is an action "upon or by reason of" a note that was undisputed at the time of the release.[2] Therefore, under this interpretation, the release has no bearing on this action.

We have defined ambiguous language as that which is " ' "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." ' " *Seiden Assocs.*, 959 F.2d at 428 (2d Cir.1992) (quoting *Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968))). The release at issue in this case, taken as a whole, satisfies this test: it is ambiguous as to whether it releases the Halpins from undisputed notes existing at the time of the release. Thus, the district court's determination that "the general scope of the release is clear from the unequivocal language of the release" was erroneous. As the court's decision not to admit the Bank's

of the alleged disputes, however, has to do with the Bailey House or line of credit.

parol evidence was based on this error, the district court's decision must be vacated and the case remanded.

 We note that the Bank drafted the release, and that New York contract law includes the rule that ambiguities in contracts should be construed against the drafter. *See, e.g., Jacobson v. Sassower,* 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985). However, New York applies this rule "only as a matter of last resort after all aids to construction have been employed without a satisfactory result," *Herzog v. Williams,* 139 Misc.2d 18, 20, 526 N.Y.S.2d 329, 330 (Just.Ct.1988); *accord Rottkamp v. Eger,* 74 Misc.2d 858, 864, 346 N.Y.S.2d 120, 127 (N.Y.Sup.1973), and we have held specifically that the rule does not preclude the admission of parol evidence, *see Spencer, White & Prentis Inc. v. Pfizer Inc.,* 498 F.2d 358, 363 n. 23 (2d Cir.1974); *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946, 951 (2d Cir.1965). Therefore, this rule of construction does not aid the Halpins either, and the case must be remanded.

### III. CONCLUSION

The district court's decision is vacated, and the case is remanded with instructions to the district court to consider the Bank's parol evidence. The Bank represented to this Court at oral argument that it would not object to the reinstatement of the Halpins' counterclaim arising from the release. The counterclaim should also be considered by the district court on remand.