19-1735-cv
Fontanez v. Sanchez

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of August, two thousand twenty-one.

PRESENT:
>       DENNIS JACOBS,
>       DENNY CHIN,
>           *Circuit Judges*,
>       J. PAUL OETKEN,
>           *District Judge*.[*]

_____

Miguel Fontanez,

>       *Plaintiff-Appellant*,

>       v.                                                                    19-1735

Deputy Sanchez, C.O. Washington, C.O.
Castro, C.O. Janawowski, C.O. Cruz De La
Cruz, C.O. Prete, 5413, C.O. Daif, 18415, C.O.
Stevens, C.O. Perez, 18670, P.A. Shearn,

_____

[*]     Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

(EMTC), C.O. Attmore, (AMKC), C.O. Barnes, C.O. Radley, C.O. Rodriguez, C.O. Diaz, Capt. Thompson,

*Defendants-Appellees*.[†]

FOR PLAINTIFF-APPELLANT: Miguel Fontanez, *pro se*, Romulus, NY.

FOR DEFENDANTS-APPELLEES: Deborah A. Brenner, Daniel Matza-Brown, of Counsel, *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Carter, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Miguel Fontanez, proceeding *pro se*, sued numerous corrections officers, their supervisors, medical staff, and the assistant commissioner of the New York City Department of Correction under 42 U.S.C. § 1983, raising claims under the Eighth and Thirteenth Amendments. He alleged that, in events occurring between August 13, 2016, and the date he filed his complaint (February 23, 2018), he was detained at Rikers Island in poor living conditions and was denied proper medical care.

---

[†] The Clerk of Court is directed to amend the caption to conform to the above.

2

## I. BACKGROUND

Fontanez initiated a prior § 1983 lawsuit in 2017 in the Southern District of New York, *Fontanez v. Marshall, et al.*, 17-cv-9925, in which he sued two New York City correction officers and two captains at Rikers Island, claiming First, Eighth, and Fourteenth Amendment violations. The parties agreed to settle *Marshall* and, on August 6, 2018, Fontanez signed a general release. That general release provided, as relevant, that "in consideration of the payment of [$200]," Fontanez released the *Marshall* defendants, the City and its employees, officers, or agents, and any entity represented by the Corporation Counsel from any liability for any civil rights violation that arose prior to signing the release. The release also provided that it could not be changed orally and that Fontanez read the release and fully understood it.

Upon learning of the *Marshall* general release, the defendants in the instant action moved for an order to show cause as to why Fontanez's complaint should not be dismissed based on the release. The district court dismissed the complaint, reasoning that the language of the *Marshall* release was clear and unambiguous, encompassed the civil rights claims against the defendants in the instant complaint, and discharged them from liability. Fontanez appeals. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

3

## II.    DISCUSSION

As an initial matter, the parties appear to agree that New York law governs the general release, and under New York law, "general releases are governed by principles of contract law." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997). A district court's interpretation of a contract is reviewed *de novo*. *See Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). In a dispute over the meaning of a contract, the threshold question is "whether the contract terms are ambiguous." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (internal quotation marks omitted). When an agreement is complete, clear, and unambiguous on its face, it must be enforced according to the plain meaning of its terms. *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277–78 (2005).

The district court properly dismissed Fontanez's complaint because the release was unambiguous and Fontanez's arguments that the release should not be enforced are meritless. The release discharged Fontanez's civil rights claims against the defendants in *Marshall*. It also discharged the City of New York, all present or past officials, employees, representatives, and agents of the City, and any entity represented by the Corporation Counsel from "all liability, claims, or rights of action alleging a

4

violation of [Fontanez's] civil rights . . . from the beginning of the world to the date of this General Release" (August 6, 2018). All of the defendants in Fontanez's current action (Department of Corrections officers, medical staff, and the assistant commissioner, and the City of New York) were represented by the City Corporation Counsel and were included among the entities that Fontanez discharged from liability in the *Marshall* general release. That release also discharged the defendants from liability for any other civil rights violations that accrued up until the date of the August 6, 2018 release. Because the claims in this action arose from events that occurred before August 2018, they were covered and barred by the release. *See A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (App. Div. 2d Dep't 2011) ("Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.") (internal quotation marks and alteration omitted).

Although Fontanez states that "words have various meanings," most likely to argue that certain words or terms in the *Marshall* release are ambiguous, he does not specify any such ambiguous words or terms. Appellant's Br. at 12. Fontanez's argument that the defendants' counsel in *Marshall* told him that the release only applied to the claims in that case, is unavailing because the text of the release prohibited oral

5

amendments, and "New York's parol evidence rule generally bars admission of extrinsic evidence to vary or contradict the terms of a fully integrated writing" like the release at issue here. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008). Similarly, his argument that he *thought* the release applied only to *Marshall* does not aid him because the terms of the agreement unambiguously and explicitly released the City and its employees "from any and all liability, claims, or rights of action alleging a violation of [his] civil rights," and he attested that he read the release and fully understood it. Any thought that Fontanez had about the scope of the agreement is irrelevant. *See Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 100 (2d Cir. 1989) ("[I]n the absence of ambiguity, . . . any conceptions or understandings any of the parties may have had during the duration of the contract[] is immaterial and inadmissible.").

Fontanez contends that he was subjected to duress, fraud, and undue influence when he signed the *Marshall* release because he was not represented by an attorney, he was asked to sign the agreement promptly, and he suffered from serious mental illness. These arguments are conclusory and meritless. *See Nelson v. Lattner Enters. of N.Y.*, 969 N.Y.S.2d 614, 617 (App. Div. 3d Dep't 2013) ("[B]are allegations are insufficient to state a cause of action to set aside the release agreement upon the ground that it was procured by duress . . . .") (internal quotation marks omitted); *Scarfone v. Village of Ossining*, 806 N.Y.S.2d 604, 605 (App. Div. 2d Dep't 2005) (plaintiff bound by

6

release when she failed to allege that she was "incapable of comprehending the nature of a settlement agreement and the surrounding proceedings, making a rational decision concerning entering into the agreement, or of controlling her conduct").  Further, Fontanez never moved to vacate or void the release in the district court either in *Marshall* or in the instant case, nor did he repay the settlement funds; rather, he reaped the benefits of the settlement but seeks to avoid its consequences.  *See Fertico Belgium S.A. v. Phosphate Chems. Exp. Ass'n*, 501 N.Y.S.2d 867, 870 (App. Div. 1st Dep't 1986) (providing that a plaintiff may not obtain the benefits of an agreement while seeking to avoid its consequences).

We have considered all of Fontanez's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7